## REDMAN v. MARTHA ADAMS, Executrix, Appellant.

### Division One, November 19, 1901.

1. **Breach of Contract: IMPLIED ASSUMPSIT: MEASURE OF DAMAGES.** Plaintiff and defendant by written contract agreed to exchange farms, the title to which should in each case be good, and defendant was also to have plaintiff's stock of goods at the agreed price of $7,598.34. Defendant went into possession of the goods and held them from January to April, selling them by retail, and plaintiff, through tenants, went into possession of defendant's farm. It was agreed that a forfeiture of one thousand dollars was to be paid by the party failing to comply with the agreement, as actual damages, and in case of failure to carry out the trade defendant could transfer to plaintiff "the stock of merchandise or its consideration (part of the stock being sold) less running expenses and less $1,000, the agreed amount of actual damages." Defendant refused to convey the number of acres agreed upon and he otherwise broke the agreement, his title proving defective. Refusing to give possession of the goods, plaintiff tendered him the year's rental of his farm and possession and sued him for the value of the goods as expressed in the contract. *Held,* that the action was not one for a breach of contract, but implied assumpsit, and the value of the stock of goods was ascertained by the parties before delivery, and hence, the defendant could not, without a showing of fraud or mistake or that these goods at their delivery had a different value than that agreed upon, limit his liability to the reasonable value of the goods, nor was the one thousand dollars to be considered as an equivalent of the value of the goods, but as actual damage for failure to carry out the agreement.

2. ———: ———: ———: **PLEADING: NONSUIT.** The setting up of the whole history of the transaction in the petition did not make the action one upon contract, for the contract is silent as to the rights of the parties with respect to the stock of goods, if defendant failed to comply therewith, but left it, as the fact made it, an action upon implied assumpsit. Therefore, the court properly refused an instruction for nonsuit.

3. ———: ———: ———: REASONABLE VALUE: AGREEMENT. In an
action upon an implied assumpsit, the plaintiff is entitled to recover
the reasonable value of the goods delivered, and not the contract
price. But the price agreed upon at the time of their delivery
should be taken to be their reasonable value, unless the defendant
shows that this agreed value was not in fact their real or reasonable
value.

4. ———: ———: WRONG THEORY AT TRIAL: APPELLATE PRACTICE.
Where the trial has been by the court sitting as a jury, and the
court has decided an action of implied assumpsit as if it were a
suit on contract, its judgment will not be reversed on appeal if the
judgment reached was proper and the result in accordance with the
true law of the case.

5. ———: COUNTERCLAIM: NO EXCEPTION TO FINDING: APPELLATE PRAC-
TICE. Where the attention of the trial court was not, in the motion
for a new trial, called to its finding on a counterclaim, the finding
will not be reviewed on appeal.

6. ———: ———: TRIAL BY COURT: CONFLICT IN TESTIMONY. Where
there is a conflict of evidence concerning defendant's counterclaim, the
finding of the court, sitting as a jury, will not be reviewed on
appeal.

Appeal from Iron Circuit Court.—*Hon. James F. Green,*
Judge.

AFFIRMED.

*Dinning, Hamel & Dinning* for appellant.

(1) The bond for $1,000 was given for the very purpose
of fixing the liability of Adams for a violation of the contract
in suit; hence, plaintiff could not sue on the contract for the
price of the goods mentioned, and especially he could not sue
for the valuation fixed by the contract. This valuation was not
fixed in cash, but for the exchange of lands, goods, etc., at
stated valuations of each separately. That is entirely different
from a contract for purchase at a specified price. Nor is this
a suit for the enforcement of any of the provisions of the con-
tract, or for a breach thereof; because, while the goods were

delivered to Adams, in pursuance of the provisions of the contract, the instrument is silent as to their return.   In fact, it never contemplated they should be returned, but intended that the entire contract should be carried out and the goods become the property of Adams.   Plaintiff having elected not to sue for the recovery of the goods themselves, his only other remedy is for their conversion; and under that remedy, he is only entitled to recover the actual value of the goods at the time of their conversion, with interest which accrued since that date. Carter v. Feland, 17 Mo. 383; Polk v. Allen, 19 Mo. 467; Spencer v. Vance, 57 Mo. 427; Hendricks v. Evans, 46 Mo. 313; Thomas Mfg. Co. v. Huff, 62 Mo. App. 124; Horine v. Bone, 69 Mo. App. 481.   (2) It is only where a contract has been fully completed, that one of the parties can recover the contract price for goods delivered under it; so that, if it be held that this action can be maintained for the goods, on the theory that the title to the same passed to defendant's testator by delivery, still, as the contract was never completed, plaintiff can only recover on a *quantum meruit,* the actual value of the goods at the time of their delivery.   Halpin Mfg. Co. v. School, 54 Mo. App. 371; Yeats v. Ballentine, 58 Mo. 530; Eyerman v. Mt. Sinai Ass'n, 61 Mo. 489; Doyle v. Turpin, 57 Mo. App. 84; Billups v. Caggs, 38 Mo. App. 367.   If the case is to be considered upon this theory, then plaintiff having declared on the contract for what he conceived to be the contract price of the goods, he can not now recover on a *quantum meruit.* And such is the well-established rule in this State.   Eyerman v. Mt. Sinai Ass'n, supra; Clements v. Yeates, 69 Mo. 623; Davis v. Brown, 67 Mo. 313; Rucker v. Harrington, 52 Mo. App. 481; Brownlow v. Wollard, 61 Mo. App. 124.

*E. R. Lentz* and *R. B. Bristow* for respondent.

(1) The petition in this case is, in effect, a declaration in assumpsit for goods sold and delivered at an agreed valuation.

The allegations in the petition regarding the agreement to sell and to convey the land and to furnish abstract showing legal title satisfactory to plaintiff and breach of this covenant are stated simply by way of inducement or explanation of the main allegations, which are the sale and delivery of the stock of goods. This is admissible both at common law and under the code. Chitty on Pleading, pp. 290-293; Green & Myers, Plead. and Prac., secs. 502, 505 and 638. (2) (a) Adams received a stock of goods at the agreed valuation of $7,598.34. Not only were the goods delivered to the defendant's testator, but the contract recites that a bill of sale thereof was made and delivered to defendant's testator. Defendant's testator received the goods and took full possession and control of the same. The absolute title to the goods passed to him at that time. Blow, Adm'r v. Spear, 43 Mo. 496; Gatzwiler v. Morgner, 51 Mo. 47; Keiler v. Tutt, 31 Mo. 306; Patter v. Gratoit, 1 Mo. 368. (b) This is not an action of trover for the conversion of the goods, and, hence, the authorities cited by appellant's under their sixth point, have no application to the facts in this case. (3) Plaintiff agreed to sell the stock of goods to defendant's testator, at and for the price and sum of $7,598.34, and defendant's testator agreed to pay that sum for them, and did receive the goods and assume full possession and control over the same, and continued in possession and control from that time, and refused to pay the contract price. The plaintiff's measure of damages is the agreed value of the goods. Chitty on Contracts (11 Am. Ed.), p. 1330; 1 Beach on Contracts, sec. 1720; Webb v. Coonce, 11 Mo. 10; Dean v. Ritter, 18 Mo. 182; Fenton v. Perkins, 3 Mo. 18; Bowman v. Branton, 111 Mo. 343; Barron v. Pound, 29 Mo. 435.

MARSHALL, J.—This is an action begun on March 27, 1897, to recover $7,598.34, the alleged value of a stock of goods delivered by the plaintiff to John E. Adams about the

eighth of January, 1896. The plaintiff lived in Monroe county and Adams, lived in Butler county. Adams owned a stock farm in Butler county, which he said contained six hundred and sixty acres, and was worth eighteen thousand dollars. Redman owned several tracts of land in Monroe county which were worth $11,720. Redman also owned a stock of merchandise, which according to an invoice thereof made by the representatives of Redman and Adams on the first of January, 1896, was worth $7,598.34. On the seventh of January, 1896, Redman and Adams agreed in writing to exchange said properties, Adams to pay Redman $1,200, the excess in value of Redman's land and stock of goods over the value of Adams's farm. It was agreed that each party should execute a warranty deed to their respective real property and should furnish to the other an abstract of title, "showing title to be free and clear of all incumbrances and showing title sufficiently good and satisfactory to party accepting title." Adams also agreed to have released a deed of trust on his farm within three months and to furnish an abstract showing such deed of trust released "and title satisfactory," and Redman agreed within thirty days thereafter "to have the incumbrances on his lands released and paid off and abstracts showing title free of all liens and title sufficiently straight and satisfactory to first party or his attorney." It was further agreed that each party should retain possession of his land until the first of March, 1896, but Redman was granted permission to go on to Adams's farm before that date and plow and put in a crop. It was also agreed that the deeds and abstracts should be delivered by each party to W. W. Longmire, and that he should hold them until the consideration was paid. Redman executed and delivered a bill of sale of the stock of goods on January 7, 1896, and delivered possession of the goods to Adams. The contract contained these further provisions:

"It is mutually agreed and understood that a forfeiture of the sum of one thousand dollars is hereby agreed upon to be paid

by the party failing or refusing to comply with this agreement within a reasonable time as designated to close this trade, said sum of one thousand dollars to be paid as actual damages by the party failing or refusing to carry out his part of the agree-ment. In case of failure or inability to carry out this trade in accordance with this contract on the part of said second party, then in that event said first party may transfer to the second party the stock of merchandise or its consideration (part of the stock being sold), less running expenses counted out and less the sum of one thousand dollars, the agreed amount as actual damages.

"Now, as first party has not paid any part of the consideration under this trade or put up any earnest money, he agrees and binds himself to make and execute a good and sufficient bond to said Redman in the sum of one thousand dollars to be approved by cashier of Poplar Bluff Bank of Butler county, Missouri, as a forfeiture bond to be in full force and effect. In case of failure or refusal to carry out this contract and complete trade within a reasonable time from time agreed on as stated, and in case of a failure or refusal or inability of first party to comply with this trade and agreement, he shall pay the said Redman the sum of one thousand dollars as the agreed amount of actual damages for such non-compliance with this agreement. This contract shall be binding upon the heirs and assigns of both first party and second party herein."

Adams took possession of the stock of goods on the seventh of January, 1896, and continued to sell them at retail. He paid Hargadine-McKittrick & Company the sum of $500, on account of what Redman owed that company, and as a part of the $1,200 difference he was to pay Redman. About the first of February, Redman entered upon Adams's farm, through a tenant, and put in a crop, and rented the farm to a tenant for a year, and Redman afterwards tendered to Adams the rent for a year.

On the twenty-fourth of March, Adams mailed a deed and an abstract of title to his farm to Longmire. The deed was for only six hundred acres and not for six hundred and sixty acres as the contract called for, and the abstract showed that Adams's title to a large portion of the land was defective, that much of the land was incumbered by mortgages, and that as to a part of it the abstract of the records showed no title what-ever in Adams. Adams was notified that his title was not good and clear. He and Redman and Longmire had an inter-view in Monroe City. Redman offered to give Adams any reasonable time in which to perfect his title and Adams refused to do anything towards making his title clear, claiming that he had title by limitation to all the land he proposed to convey where the records failed to show that he had title, and not at-tempting to correct his deed so as to convey six hundred and sixty acres, but he proposed to rescind the trade if Redman would take back the stock of goods as they then were, without any accounting as to those sold, and refused to pay the one thousand dollars damages agreed on as a penalty if he did not carry out his part of the contract. Redman refused to settle on those terms, and hence this suit.

The petition sets out the facts as here stated and asks judgment for $7,598.34, the value of the stock of goods. The answer admits and sets out in full the contract, alleges that Adams fully kept all his part of the agreement, but that Red-man did not do so but refused to carry it out on his part; that it was agreed when Adams took possession of the stock of goods that he should sell them from time to time and replenish the stock with new goods in place of those sold and that he had done this, but was unable to state the amount so sold and replenished; that when Redman refused to carry out his part of the contract, he (Adams) offered to return the stock of goods to him and Redman refused to receive them; and further avers that the stock of goods was only worth $3,000 and not $7,598.34, and that Adams was liable only for their reasonable value and not

for the inventoried price. The answer set up three counter-claims, to-wit: First, rent for the Adams farm for the year from April 16, 1896, to April 16, 1897, during which time it is alleged that Redman remained in possession of the Adams farm; second, damages to the freehold while Redman or his tenant was in possession; and third, the five hundred dollars paid by Adams to Hargadine-McKittrick & Company, for Redman. The case was tried before the court, without the aid of a jury.

The defendant asked and the court refused to give the following instructions:

"1.   The court instructs that under the pleadings and evidence, plaintiff is not entitled to recover as for a breach of the contract mentioned in the petition.

"2.   The court also instructs that plaintiff is not entitled to recover in this action the price or value of the goods mentioned in his petition and in the contract in suit, but only the reasonable market value of said goods at the time of their delivery to Dr. Adams, together with interest on such sum at the rate of six per cent per annum from the date at which the court finds Dr. Adams during his lifetime, or the defendant since she qualified as executrix of Dr. Adams's estate, refused to return said goods to plaintiff."

Which instructions the court refused to give; to which action of the court in refusing to give said instructions and each of them, the defendant then and there duly excepted and saved her exceptions.

The court, at the instance of defendant, gave the following instructions:

"The court instructs, that if it finds from the evidence that the plaintiff, without Dr. Adams's consent, held possession of the Butler county farm, after the contract mentioned in defendant's first counterclaim was terminated; that then defendant is entitled to recover, under said counterclaim, the reasonable value of the rents and profits of said farm during the time

possession of the same was held or retained by the plaintiff after said contract was terminated.

"The court instructs that if it, sitting as a jury, finds from the evidence that the plaintiff or his tenant, while in possession of the farm in question, plowed up a portion of the meadow lands thereon, or that he authorized or permitted others to pasture or allow stock to go on other portions of said meadow and so trample the same as to injure or destroy the roots of the grass or turf of said meadow, and to render it unfit for meadow purposes; that then defendant is entitled to recover, under the second counterclaim of her answer, as damages, what it would reasonably have cost to restore those portions of said meadow lands plowed up, destroyed or injured, as aforesaid, to as good condition as they were in at the time they were so destroyed or injured."

The court found for the plaintiff for $7,598.34, being the invoice price of the stock of goods, and found for the defendant $250 on the first counterclaim for rent of the Adams farm, $50 on the second counterclaim for damages to the freehold, and $500 on the third counterclaim for amount Adams paid to Hargadine-McKittrick & Company for Redman, aggregating $800, and entered a judgment for the plaintiff for the difference, amounting to $6,798.34. After proper steps the defendant appealed.

## I.

The defendant contends that under the pleadings the plaintiff is not entitled to recover at all, or if at all he is only entitled to recover the reasonable value of the stock of goods and not their invoiced price.

The theory of the contention is that this is a suit upon the contract and as the contract was never completed on either side, the plaintiff can not recover on the contract but is reverted to a suit upon a *quantum meruit*.

The value of the stock of goods was ascertained and agreed upon by the parties before they were delivered to Adams, and Adams took possession of them as of that value, and made sales of them in the regular course of business from January 8 to some time in April when the trade fell through.

The contract provided that if Redman failed or was unable to carry out his part of the contract Adams might return the portion of the goods sold or its consideration ("part of the stock being sold"), "less running expenses counted out and less the sum of one thousand dollars, the agreed amount as actual damages." The contract further provided that as Adams had paid no part of the consideration or put up any earnest money, he should execute a bond for one thousand dollars, and in case of his failure or inability to carry out the contract he should pay Redman one thousand dollars as the agreed amount of actual damages. But it was nowhere provided by the contract and could not have been the intention of the parties that if Redman failed to comply with his contract Adams was to return to Redman only so much of the stock as remained unsold, less running expenses, and the one thousand dollars agreed damages, and should keep whatever he had received from the sale of the goods in the meantime. For under such a construction of the contract if Redman failed on his contract and Adams had sold all the goods, Redman would have to pay the expenses of selling them and also pay the one thousand dollars agreed damages too, and Adams would also have the amount the goods sold for. However, Redman did not fail to carry out his contract and, therefore, this feature of the contract is not of any moment in this case. Adams was the party in default, and, therefore, we are concerned only with what Redman's rights and Adams's liabilities are. It will be observed that the contract is silent as to what should be done as to the stock of goods in case Adams failed to carry out his part of it. The contract only provides that if Adams failed or was unable to carry out his part of the contract he should pay one thousand dollars

agreed damages. This is a provision to cover Redman's damage if Adams failed to comply with the contract. But as nothing was provided in the contract as to what should be done about the $7,598.34 worth of goods that had already been turned over to Adams and which he was selling from time to time, and no right was conferred upon Adams to return the unsold portion thereof, the law implied, at once, a contract on his part to pay for them at their reasonable value. And this action is upon that implied promise. It was not necessary for the plaintiff to set out, as he did, the history of the whole transaction.

It would have been sufficient if he had sued upon an implied assumpsit for goods sold and delivered, and then he could have shown the contract and its breach by Adams in evidence, and thereby have made out a prima facie case. By setting up the whole history of the transaction, or as the Code provides, by stating all the facts, it did not make the action one upon the contract, for, as pointed out, the contract is silent as to the rights of the parties with respect to the stock of goods if Adams failed to comply with the contract, but left it an action upon an implied assumpsit. The circuit court, therefore, properly refused the instruction for a nonsuit.

The second instruction asked by the defendant declared the law in the abstract and should have been given. For in an action upon an implied assumpsit the plaintiff is entitled to recover the reasonable value of the goods delivered, and not the contract price, for the suit is not upon a contract. The price agreed upon as the value of the goods when they were delivered was, however, prima facie evidence of their reasonable value, the defendant, however, having the right in such a form of action to show that although such was the agreed value, it was not the real or reasonable value, and the plaintiff's recovery being limited to the reasonable value. [Ibers v. O'Donnell, 25 Mo. App. 120; Rude v. Mitchell, 97 Mo. l. c. 371; Mansur v. Botts, 80 Mo. 651.]

But it does not follow that for the error in refusing to

give the second instruction asked by the defendant the judgment in this case must be reversed. The refusal to give this instruction showed that the theory on which the lower court tried the case was that the action was upon the contract and that the contract price for the goods was the measure of the plaintiff's recovery. This theory was erroneous, but the case was tried by the court without the aid of a jury, and it would be improper and an useless thing to reverse the judgment because the lower court proceeded upon an erroneous theory if the result reached by the court was a proper result and the only result that could have been reached if the case had been tried upon the correct theory, and if that result is in accord with the true law of the case. This principle has been applied even to cases tried by a jury where the instructions given were erroneous but the verdict was in accordance with the true law applicable to the case. [Hill v. Wilkins, 4 Mo. l. c. 87; Oldham v. Henderson, 4 Mo. 295, and cases cited in note; State ex rel. v. Adams, 76 Mo. 605; Greer v. Bank, 128 Mo. l. c. 575, and cases cited; Vogg v. Railroad, 138 Mo. l. c. 180, 181.]

In this case the parties took an inventory of the goods and fixed their value before they were turned over to the defendant. The defendant took possession of them and continued for over three months to sell them in the regular course of business, and never until after this suit was brought did he suggest that they were not worth what he had agreed they were worth. Then for the first time after he had sold them and had the proceeds, he sought to show that they were not worth as much as he himself had appraised them at when he took possession. The evidence, however, wholly fails to support this claim, and any judgment which gave the plaintiff any less than the value placed upon them by the parties themselves when they were turned over to the defendant—there being no evidence of fraud or mistake or overreaching—could not be allowed to stand, and *e converso* a judgment which gave the plaintiff that amount ought not to be disturbed because of any mistaken theory of the law that the

trial court may have indulged or expressed. Erroneous instructions in such a case do not constitute reversible error, and unless there is reversible error, it is not proper to reverse a judgment. [R. S. 1899, sec. 865.] This judgment is for the right party, and in this respect for the right amount.

## II.

It is next insisted that the fifty dollars allowed the defendant on his second counterclaim is not as much as the evidence showed the defendant was entitled to.

There are two all-sufficient reasons why this contention is untenable in this court: *first,* because this contention was not called to the attention of the trial court in the motion for a new trial, and no objection or exception to this finding was made or saved by the defendant in the trial court; and, *second,* the testimony as to the quantum of damage that was done to the freehold was conflicting and, therefore, the finding of this fact by the trial court is not open to review here.

## III.

Lastly it is contended that the plaintiff and not the defendant failed to comply with the contract, and, hence, the plaintiff can not recover. The evidence does not support this contention. By the terms of the contract Adams was obliged to furnish to Redman, within three months, a deed to 660 acres of land and an abstract of the title showing a good and clear title, before Redman was obliged to do anything except to turn over the stock of goods, which it is conceded he did on the eighth of January, 1896. Adams, wholly failed to comply with this obligation in the following particulars: *First,* he tendered a deed for 600 acres instead of 660 acres; *second,* the abstract of title, concededly, showed many defects, e. g., existing, unreleased mortgages, outstanding dower, and as to several tracts

no record title in Adams whatever. Adams made no attempt to convey the sixty acres, and as to the other matters, claimed that he had title by limitation, without even attempting to show a termination of the outstanding .dower rights, or that the persons holding the record title were *sui juris* and not under disability and, hence, barred by his ten or even twenty years' possession. Under these circumstances the trial court properly held that Adams was the guilty party.

For these reasons the judgment of the circuit court is affirmed. All concur.