# CHARLES O. BAIRD, Appellant, v. CHARLES E. GRANNISS.

### Division One, December 24, 1907.

1. **CORPORATION: President: Trustee for Stockholder.** Whether or not the president and general manager of a corporation is, because he is such, in such a trust relation to a stockholder that he cannot buy the latter's stock without first giving him all the information he has that would influence its market value, is not decided in this case, since, even if that were the law, the proof does not sustain the allegation, even if it were unmistakably pleaded.

2. FRAUD AND DECEIT: Promise of Information as to Value of Stock: Purchaser: President of Corporation. Where plaintiff through his broker sold to defendant, president and general manager of a pine company, his corporate stock for $125 per share, which soon thereafter proved to be worth $187, and sues for the increase in the price, alleging that defendant had promised, by conversations and in letters, to keep him informed as to anything that tended to increase the market value of the stock, he cannot recover if there is no proof to sustain the charge of deceit and misrepresentation.

3. ———: ———: ———: ———: Failure of Proof. Defendant was the president and general manager of a corporation that owned 28,330 acres of yellow-pine land in Louisiana, and whose place of business was Kansas City. Plaintiff lived in Philadelphia, and owned 170 shares of the company's stock, and in his petition alleges that defendant, knowing that negotiations were on foot that were likely to lead to an advantageous sale of the corporation's property, without communicating that fact to plaintiff, employed a broker to open negotiations with him for the purchase of his stock, which ended in a sale by plaintiff to defendant of his stock at $125 per share, plaintiff not knowing for whom the broker was acting, when in fact the stock was at the date of sale worth $187; and that defendant had, in conversations and letters, promised him to give him all information relative to the company and the value of its stock and assets, and that he relied entirely upon this promise. The evidence showed that, prior to the sale, the stock had paid an annual dividend of from eighteen to twenty-four per cent; that plaintiff had for ten months been in correspondence with brokers in regard to the sale of his stock; that on April 8th they wrote him they had a customer who wished to buy some of the stock, offering him $115; on April 10th, he replied that he would sell for $125, not less; April 16th, they wrote that "subject to filling your order" they would take the stock at the price offered; April 19th, he telegraphed acceptance, and on the same day they wired, "Cannot give definite answer until next week." At that time defendant was absent, and on his return they wired on April 21st, "Ship stock with draft attached as per your telegram of nineteenth;" and on April 22nd plaintiff telegraphed he had shipped stock with draft attached. On that day defendant received a letter which offered $15 per acre for the land, and at a meeting of directors on May 5th the offer was accepted, the land sold, and at that price the stock was worth $187. A short time prior to that the same parties had made an oral offer of $15 per acre, but nothing was agreed upon. The letters showed that defendant had constantly kept plaintiff informed of the business of the company, but had said nothing about the pur-

chase of his stock. *Held*, that no fraud and deceit was shown, and plaintiff cannot recover the difference between the price at which he sold the stock and its worth when the sale of the land was consummated on May 5th.

4. ————: **Or Cause in Equity.** Whether plaintiff's petition stated an action at law for fraud and deceit, or one in equity to charge defendant as the president and general manager of the corporation for breach of trust in not keeping him as a stockholder informed of everything that would affect the market value of the corporate stock, is immaterial, and unnecessary to decide, if the cause was tried by the court alone, and a demurrer was sustained to the evidence, and that ruling was correct.

Appeal from Jackson Circuit Court.—*Hon. A. F. Evans*, Judge.

Affirmed.

*J. J. McClintock, Jr.,* and *Braley & Simpson* for appellant.

(1) Plaintiff, upon the issues as made by the pleadings, was entitled to a jury trial. Constitution, art. 2, sec. 28; R. S. 1899, sec. 691; Kitchen v. Railroad, 59 Mo. 514; Earl v. Hart, 89 Mo. 263; Briggs v. Railroad, 111 Mo. 168; Benoist v. Thomas, 121 Mo. 661. (2) Defendant, by reason of the situation of the parties, and from the fact that he was not only a stockholder and a director, but was also the president and general manager of the Pine Company, which was practically in liquidation, owed the duty of keeping the plaintiff informed of the transactions and negotiations which affected the value of the plaintiff's stock, which he was attempting to purchase, and did purchase, and is liable for not so doing. Fisher v. Budlong, 10 R. I. 525; Commissioners of Tippecanoe v. Reynolds, 44 Ind. 509; Koshler v. Black Run Iron Co., Black 715; Graham v. Cummings, 208 Pa. 576; Milford v. Com., 144 Mass. 65. (3) Defendant was the agent of plaintiff under the circumstances of this case and could not law-

fully make a secret profit on plaintiff's stock, and is therefore liable for the difference between what he paid for the stock and what he received in dividends thereon to the extent of $10,591.00 and interest thereon. Mulvane v. O'Brien, 58 Kan. 403; Mechem on Agents, secs. 1, 469, 937; Graham v. Cummings, 208 Pa. 516; Hertsog v. Hertsog, 29 Pa. 465; Machine Co. v. Clark, 15 Kan. 492; Fisher v. Bell, 91 Ind. 243; Brown v. Eaton, 21 Minn. 409. (4) Defendant obtained plaintiff's stock by fraud and deceit, and is therefore liable to plaintiff in damages. Fisher v. Budlong, 10 R. I. 525; Bigelow on Fraud, 330; Pomeroy's Equity Jurisprudence, sec. 1090; Chatlain v. Ins. Co., 86 Ill. 220; Forbes v. McDonald, 54 Cal. 98; Bispham on Equity, sec. 213; Stewart v. Wyoming Cattle Ranch Co., 128 U. S. 383; Walsham v. Stainton, 1 De G., J. & S. 678; Walsh v. Golden, 130 Mich. 531. (5) While it may not have been defendant's duty originally by virtue of his official position to have advised plaintiff of the affairs of the company affecting the value of the stock, yet after having written as he did in January, 1901, and through his agents in 1902, he then became a trustee for plantiff and owed the duty to plaintiff to promptly keep him advised of all matters pertaining to the company and affecting the value of the stock. Harrison v. Murphy, 106 Mo. App. 465; Krumbhaar v. Griffiths, 151 Pa. St. 223; Jackson v. Ludeling, 15 Wall. 616; Beach on Trusts and Trustees (Ed. 1897), secs. 214-16-28; cases heretofore cited under point 2. (6) While some authorities hold that a director need not necessarily, by reason of such directorship, advise the stockholders of the affairs of the company, yet justice can be best subserved by holding that a president and general manager of the corporation stands in the nature of a trustee to the stockholder, and may not buy the stock of a stockholder unless he does so openly as the purchaser, and advises the stockholder of all negotiations and

transactions affecting the value of the stock which he so desires to purchase. Commissioners of Tippecanoe v. Reynolds, 44 Ind. 509 (see dissenting opinion); Beach on Trusts and Trustees (Ed. 1897), sec. 228.

*Haff & Michaels* and *W. M. Walker* for respondent.

(1) There is no confidential relation between an officer of a corporation and a stockholder so far as a sale of stock between them is concerned, and an officer of a corporation may buy and sell its stock like any other individual. Crowell v. Jackson, 53 N. J. L. 656; Board of Commrs. of Tippecanoe Co. v. Reynolds, 44 Ind. 509; Carpenter v. Danforth, 52 Barb. (N. Y.) 581; Gillett v. Bowen, 23 Fed. 625; Deaderick v. Wilson, 67 Tenn. 108; Percival v. Wright, L. R. 2 Chan. (1902), 421; 71 L. J. Ch. 846; 51 W. Rep. 241; 1 Manson 17; Hooker v. Steel Company, 215 Ill. 444; Haarstick v. Fox, 9 Utah 110; Walsh v. Goulden, 130 Mich. 531; Krumbhaer v. Griffiths, 151 Pa. St. 223; Fisher v. Budlong, 10 R. I. 525; O'Neil v. Ternes, 32 Wash. 528; Bloom v. Loan Co., 152 N. Y. 114; Johnson v. Laflin, 103 U. S. 800; Mulvane v. O'Brien, 58 Kan. 463; Perry v. Pearson, 135 Ill. 218; Smith v. Hurd, 12 Met. 371; Spering's Appeal, 71 Pa. St. 11; Slee v. Bloom, 20 Johns. 669; Gilbert's Case, L. R. 5 Ch. App. 559; Grant v. Attrill, 11 Fed. 469; Tricom v. Winship, 43 La. Ann. 48; Converse v. United Shoe Mach. Co., 185 Mass. 422; Strong v. Gutierrez, 5 Official Gazette, 72 (Sup. Ct. Phil. Is. 1907); Cook on Corporations (4 Ed.), secs. 320, 350; Clark on Corporations, sec. 213; Taylor on Private Corporations (5 Ed.), sec. 695; Morawetz on Private Corporations, pp. 565, 537; Elliott on Private Corporations (3 Ed.), sec. 5027; 21 Am. and Eng. Ency. Law (2 Ed.), 898; 10 Cyc. 796; Halliwell on Stocks and Stockholders, sec. 184; Beach on Private Corporations, secs. 614, 646; Wilgus Corporation Cases, pp.

1706, 1707, 1791; Doyle v. Laughlin, 53 Mo. App. 542; R. S. 1899, sec. 966; Bank v. Lanier, 11 Wall. 369. (2) The evidence clearly shows that plaintiff knew all the facts known to defendant which might affect the value of his stock; that defendant was not only not guilty of fraud, deceit, misrepresentations or concealment, but treated plaintiff with extreme fairness. (3) Since plaintiff's evidence entitled him to no relief, it is immaterial whether the case was tried as a law or an equity case. Ward v. Quinlivin, 65 Mo. 454; Redman v. Adams, 165 Mo. 71; Carmody v. Hanick, 99 Mo. App. 357. (4) Courts will not aid those who err in business judgment. Bryan v. Hitchcock, 43 Mo. 531.

VALLIANT, P. J.—Defendant through a broker in Kansas City purchased of plaintiff 170 shares of stock in a corporation called the Missouri & Louisiana Yellow Pine Company for which he paid $125 a share; the plaintiff now claims that he was overreached in the transaction, that the stock was at that time really worth $187 a share and that the defendant's relation to the plaintiff and to the corporation was such that he owed the duty to plaintiff to inform him of the facts that influenced the value; that the difference between the price paid and the real value of the stock was $10,591 for which with interest and costs the petition prays judgment.

The statements in the petition as constituting the plaintiff's complaint leave it in some doubt as to whether this is a suit in equity to charge the defendant as an officer of the corporation for a breach of his trust or an action at law for deceit and misrepresentation. The petition states that the defendant was the president and general manager of the corporation and for that reason was the "trustee and agent" of the plaintiff in relation to his stock, yet in violation of that duty bought the stock for less than it was worth without

giving plaintiff information of certain material facts that defendant as president and general manager knew. The petition also alleged that defendant had in conversation promised that he would give the plaintiff all news and information relative to the Pine Company affecting the value of the stock, that plaintiff "was relying entirely upon said promise made to him by defendant and the information which he was to receive from said defendant and which by reason of the facts aforesaid the defendant owed this plaintiff." The plaintiff resided in Philadelphia, defendant in Kansas City where the corporation was domiciled. Whilst the terms wrongfully and fraudulently are applied to defendant's acts, and "deceit, concealments and misrepresentations" are charged in an abstract way, yet the only allegation as of a misrepresentation of a fact is that in the first letter of the broker opening the negotiations that ended in a sale of the stock it was said the stock was "slow sale."

The gravamen of the complaint is that defendant failed to communicate to plaintiff material facts affecting the value of the stock. The sum of the whole case made by the petition is that the defendant being the president and general manager of the corporation, well knowing that negotiations were on foot which were likely to lead to an advantageous sale of the corporation's property, without communicating that fact to the plaintiff, employed a broker to open negotiations with him for the purchase of his stock which negotiations ended in a sale by plaintiff to defendant for $125 a share, plaintiff not then knowing for whom the broker was acting, when in fact the stock at the date of the sale was really worth $187 a share; in addition to the above is the allegation that the defendant promised the plaintiff to keep him informed of every thing affecting the value of the stock.

The answer was a general denial.

When the cause was ready for trial there was a difference of opinion between the counsel as to whether it was an action at law or a suit in equity, the counsel for plaintiff contending that it was an action at law and demanded a jury trial, counsel for defendant that was a suit in equity. The court construed it to be a suit in equity and tried it as such.

At the close of the plaintiff's case the defendant demurred to the evidence, which demurrer the court sustained and rendered judgment for defendant, from which judgment the plaintiff has appealed.

I. As the plaintiff in his petition has mixed his facts on which he seems to have predicated a claim against the defendant on the theory that he was a trustee who had been unfaithful to his trust, with facts on which he seems to base a cause of action for fraud and deceit, it will be necessary for us to separate the two classes of facts and see if the plaintiff has a just cause of complaint on both or either ground. In so far as the plaintiff's claim rests on the theory that the defendant has been unfaithful to his trust as an officer of the corporation it is upon the allegations that the defendant was the president and general manager of the corporation, that as such he knew its affairs, that he bought the stock through a broker without disclosing to the plaintiff who the purchaser was and without giving him information that negotiations were on foot which it was expected would result in an advantageous sale of the property of the corporation. Assuming those allegations to be true do they make out a case of betrayal of trust for which the defendant can be held to account? We are leaving for the present out of view whatever there may be in the case to support the charge of fraud and deceit, and are viewing the defendant's acts as an officer of the corporation in relation to his dealings with an individual stockholder for the purchase of his

stock. If the president of a corporation is a trustee for each individual stockholder in the sense and to the extent that he is bound to keep each stockholder informed of everything in existence or in prospect that would affect the market value of his stock or influence the stockholder in negotiating a sale of his individual holding, then this petition states a cause against the defendant as an unfaithful trustee.

There is no question but what the officer of a corporation is a trustee for the corporation in the management of its affairs, and in that sense he is indirectly a trustee for the stockholders in general, but that is not the point in this case. Was the defendant because he was president and general manager in such a trust relation to the plaintiff that he could not buy the stock without first giving him all the information he had that would influence its market value? If there has been any direct decision of this question in this State it has not been brought to our notice, and in view of the research and industry shown in the briefs we are satisfied that if any such decision existed it would have been found by the counsel. That no such trust relation exists has been often declared in the courts of other states, as by reference to the list of cases cited in the brief for respondent which will be printed with this report will appear. But interesting as that question is we do not feel justified in deciding it in this case, because on a review of all the evidence bearing on this as well as on the question of fraud and deceit, which evidence will be summarized in the next succeeding paragraph, we are satisfied that, if the allegations of the petition aiming to charge the defendant with a breach of his duty as officer of the corporation to a stockholder are sufficient to call him to account, the proof does not sustain the allegations.

II. We come now to the charge that the defendant was guilty of fraud and deceit.

The petition alleges that the plaintiff because of his residence in Philadelphia had no personal knowledge of the pine lands owned by the corporation in Louisiana, "but being acquainted with defendant obtained all his information as to the value of the stock from time to time from the defendant." Then the petition states: "Plaintiff further states that as such president and general manager the defendant had always led the plaintiff to believe in his personal conversations with plaintiff, and promised that he, the defendant, would afford and give the plaintiff any and all news and information relative to said Pine Company, and the value of its stock and assets, and that this plaintiff, relying upon said promises and the previous course of the relations and negotiations which he had had with the defendant, and relying upon the fact that the defendant was both president and general manager of said company, was led to believe that when anything occurred which would likely increase the value of plaintiff's stock or the value of the assets of the company, that he would be promptly informed of such fact by the defendant herein. And plaintiff further alleges that by reason of said promises and the previous negotiations and understandings between the plaintiff and defendant, and by reason of the aforesaid facts and said official positions which the defendant had in said company that said defendant became a trustee and agent and owed the duty of trustee and agent toward this plaintiff in relation to said stock." Then after stating that negotiations were pending for the sale of the company's property which ended in the sale on April 25, 1902, the petition says "all of which facts were known to the defendant, and were unknown to the plaintiff, as the plaintiff was relying entirely upon the said promise made to him by defendant and the information which he was to receive from the said defendant and which by reason of the facts aforesaid, the de-

fendant owed this plaintiff.'' The substance of these allegations is that the defendant from his position as president and general manager knew these facts and it became his duty to inform the plaintiff because he promised to do so. The petition refers in general terms to ''personal conversations'' and ''the previous course of the relations and negotiations,'' but specifies nothing under those heads.

The evidence for the plaintiff tended to prove as follows: The Missouri & Louisiana Yellow Pine Company was incorporated in this State in 1896 with an authorized capital stock of $160,000; the par value of the stock was $100 per share, and it was all issued except $15,000. The plaintiff was one of the original subscribers and he owned 170 shares. The property of the company consisted of 28,330 acres of yellow-pine land in Louisiana. In 1897 the corporation made a contract with the Central Coal & Coke Company by which the latter was to cut timber off this land, paying therefor $1.50 per thousand feet; that rate was to last for two years and at the end of every two years the parties were to agree on a price for the next ensuing two years and if they could not agree they were to arbitrate.

The company paid dividends at the rate of $1.50 to $2 per share per month. Plaintiff up to the time he sold his stock had received 58 per cent dividends on it. It was after the original contract with the Coal & Coke Company that the defendant became the president and general manager; he held those positions during the time covered by this controversy. Plaintiff had been in Kansas City several times, had attended two of the stockholders' annual meetings, and had been acquainted with the defendant several years. Letters running over a period from November 20, 1901, to January 30, 1902, passed between plaintiff and defendant. November 20, 1901, plaintiff wrote to defendant referring to the diminu-

tion of dividends lately, and asking why. Defendant answered November 22nd explaining the cause. January 20, 1902, plaintiff wrote suggesting that it was defendant's duty to insist on a higher price from the Coal & Coke Company when the time came to fix the price for another two years, and asking defendant why a million feet of lumber had been given free to the Coal & Coke Company. To this defendant replied that the gift of the million feet was before defendant's connection with the company, but that it was given as bonus to induce the Coal & Coke Company to locate its plant on the Pine Company's property. Then as to the increased price to be demanded of the Coal & Coke Company defendant wrote: ''The subject of increasing the rate of stumpage with the Central Coal & Coke Company has never been lost sight of, and if you will read the contract carefully, of which you have a copy, you will see that in case the price of stumpage should go down, we might have, if we raise the question, to accept a reduced instead of an increased price. These conditions prevailed up to six months ago. We are now, however, negotiating for a change of price and same will, without question, be a substantial increase. In connection with the whole matter, it should be borne in mind that timber land in our vicinity which was selling at the time these contracts were made, for $5 and $6 an acre, are now worth any where from $12 to $15. The sale of this stumpage is like the sale of any other property, —real estate for instance,—and if the sale was made half a dozen years ago at $6 we could not reasonably expect, because there has been increase in values, that the purchasers would voluntarily come forward and pay twice what they agreed to. I am very anxious at all times to answer any questions you propound, and shall be glad also to act upon suggestions.''

January 29, 1902, defendant wrote to plaintiff a long letter full of detail and very encouraging as to the

prospect of getting a better price from the Coal & Coke Company; he said: "I believe we will be able to secure from the Central Coal & Coke Company a substantial increase for stumpage during the next two years." On January 30th he wrote again, in which he said: "We will not have to wait until the June period in order to readjust the price of stumpage for the coming two years. Mr. Keith is now East but is expected to return in a week or ten days, and I fully expect on his arrival to consummate a contract which has already been commenced which will give us an increase of price; at present I cannot state just the amount but hope it will be a very considerable amount."

Plaintiff was in correspondence with a firm of brokers in Kansas City as early as June, 1901, with reference to the sale of his stock at $125 a share. These brokers had tried to sell it at that price but had no offer.

April 8, 1902, the brokers through whom the defendant purchased, wrote to plaintiff telling him they had a customer who wished to buy some stock of this company, offering him $115 per share for his stock. April 10th, plaintiff replied that he would sell at $125, not less. April 16th, brokers wrote that "subject to filling your order" would take the stock at price offered. April 19th plaintiff telegraphed broker: "Accept your offer of $125, for 170 shares Missouri & Louisiana Yellow Pine. Wire instructions as to shipment." On same day brokers answered by telegraph: "Cannot give definite answer about using stock until next week." April 21st, broker telegraphed plaintiff: "Ship us Missouri & Louisiana Yellow Pine Company stock with draft attached as per your telegram of nineteenth." April 22d, plaintiff telegraphed brokers that he had forwarded the stock with draft atttached. The stock arrived in Kansas City and was delivered to the brokers, who paid the drafts attached, April 25th.

All the negotiations between the defendant as president and general manager of the Missouri & Louisiana Yellow Pine Company and the president of the Coal & Coke Company up to April 22nd had been in reference to an increased stumpage contract but on that day defendant received a letter from the president of the Coal & Coke Company offering to buy the land of defendant's corporation for $15 per acre. Because of the difficulty in getting the directors together in a meet-. ing, this offer was not acted on until May 5th, when the board met and accepted it. The sale of the land at that price made the stock worth $187 a share.

There was no evidence to sustain the statement in the petition that the defendant promised that he would "give the plaintiff any and all news and information relative to said Pine Company and the value of its stock and assets," on which promise the petition says the plaintiff "relied entirely" in this business. Appellant in his brief says: "The whole tenor of Mr. Granniss's letters, as printed in the abstract of the record on pages 22 to 25 inclusive, is to the effect that if anything occurred to affect the company, Mr. Granniss would be only too glad to advise the plaintiff." Those letters were written in answer to letters from the plaintiff and were straight-forward answers to his questions; the only words in any of them that could be construed into a promise were in the closing sentence of the letter of January 23rd: "I am very anxious at all times to answer any questions you propound and shall be glad also to act upon suggestions." That was no promise to volunteer information, but only to answer his questions.

Besides, nothing definite had occurred between the date of the last letter and April 22d, when the written proposal of the Coal & Coke Company was received. There was testimony to the effect that in a conversation held a short time before April 22d, between the

defendant, representing the Pine Company, and Mr.
Keith and Mr. Perry representing the Coal Company,
in which the defendant was insisting on a stumpage
price of $2.25 per thousand which the others would not
agree to, an oral offer was made to buy the land at $15
an acre or pay $1.75 per thousand stumpage, but noth-
ing was agreed on, no written offer was made until
April 22d and that was not accepted until the meeting
of the board of directors May 5th.

Defendant being called as a witness for plaintiff
testified that as soon as he received the written propo-
sal he notified the directors of its receipt, but did not
notify any of the other stockholders; when asked why
he did not notify the plaintiff he said plaintiff had then
ceased to be a stockholder.

It is argued for plaintiff that defendant maneu-
vered to delay the closing of the sale of the stock until
the letter of April 22d had been received. But the evi-
dence does not bear out that argument. The plaintiff's
telegram to defendant's brokers accepting their offer
of $125 a share "subject to filling your order" was
April 19, and on the same day the brokers replied by
telegram, "Cannot give definite answer about using
stock until next week." In explanation of this, one of
the brokers, a witness for plaintiff, testified that the
19th was Saturday, Mr. Granniss was out of the city,
did not return until Monday, which was as soon as they
could learn definitely whether he was willing to pay
that price; as soon as they saw him they sent the tele-
gram of April 21st which closed the trade.

We do not find any evidence that tends to show
that the defendant ever misrepresented any fact or
even withheld information of any material fact. The
conversations he held with Mr. Keith or Mr. Perry
were only proposals pro and con binding on neither
until agreed to in legal form; the proposal even in the
letter of April 22d could have been withdrawn at any

time before it was accepted by the board of directors. Whether he was under obligation or not to give the plaintiff information he did, in answer to every letter, give information of every material thing that had occurred and had even gone farther and given his opinion that the negotiations looked very favorable to a considerable advance in the price they would get for their timber.

The contract for the sale of the stock was concluded April 21st, when the brokers telegraphed the plaintiff to ship the stock with draft attached, which he promptly did. If the draft had been dishonored the brokers or the defendant, their undisclosed principal, would have been liable for a breach of the contract.

The evidence does not sustain the plaintiff in his statement that he relied entirely on the promise of the defendant to give him information. He had been in correspondence with a firm of brokers in Kansas City with whom the defendant had no connection and had authorized them to sell this stock for him at the very price he sold it to defendant, and those brokers had been trying in vain for months to sell it. Reference is made to the statement in the broker's letter of April 8th, in relation to the stock, ''There has not been much trading in it and it is rather a slow matter,'' as if that was a misrepresentation, but the evidence shows it was true, there had been no recent sales and the plaintiff himself knew by his correspondence with his brokers that it was a slow matter to sell the stock.

There is nothing in the evidence to sustain the charge of deceit and misrepresentation.

III.  Whether the plaintiff's petition states a cause in equity or at law, is immaterial under the evidence adduced, because since the case was disposed of on demurrer to the plaintiff's evidence the result is the same as if a jury had been empannelled. The evidence did not sustain the plaintiff's case on either theory.

We should not reverse a judgment unless error was committed materially affecting the merits of the action. [Sec. 865, R. S. 1899; Ward v. Quinlivin, 65 Mo. 453; Redman v. Adams, 165 Mo. 71.]

The judgment is affirmed. All concur.