BY THE

## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

MARCH TERM, 1908.

---

GRISHAM, Appellant, v. NATIONAL LIFE INSUR-
ANCE COMPANY, Respondent.

St. Louis Court of Appeals, March 3, 1908.

1. **APPELLATE PRACTICE: Motion for New Trial.** An appellate court will not review any error alleged to have been committed by the trial court in the progress of the trial unless such error is called to the attention of the trial court in a motion for new trial.

2. **EVIDENCE: Parol Evidence to Vary Written Contract: Failure to Read Contract.** Where a party signs a written application for life insurance without reading it and without being induced to do so by any fraud or deception, he cannot afterwards, in his suit to recover the premium paid, be permitted to prove that the agent in procuring the application represented that the policy contained provisions different from those stated in the application.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

(57) [130 App.

*W. E. Barton* for appellant.

McNearney was authorized to solicit insurance for defendant and to tell the people the terms of the policy. This makes his fraudulent statements the act of the Company. Greer v. Bank, 128 Mo. 574; Gentry v. Insurance Co., 15 Mo. App. 215; Hart v. Insurance Co., 27 L. R. A. 86; Brown v. Assurance Co., 45 Mo. 221.

*J. W. Jamison* for respondent.

It is only necessary in respect to the two assignments last mentioned, without going into the merits of them, to suggest that if error was committed in the respects mentioned therein, that no review can be had in this court because not preserved in plaintiff's motion for a new trial. State v. Kyle, 177 Mo. 659. "Where the action of the trial court is not complained of in the motion for a new trial, the appellate court cannot notice it." Fender v. Haseltine, 106 Mo. App. 28; Kansas City v. Bacon, 157 Mo. 450; Hammond v. Coal & Coke Co., 156 Mo. 32; Needles v. Ford, 167 Mo. 495; Redman v. Adams, 165 Mo. 60. But one other point made in the motion for a new trial remains for discussion, viz: was error committed by the court in giving defendant's instruction in the nature of a demurrer to the evidence. As to this matter we submit that the court's action was clearly proper. Ijams v. Life Assurance Society, 185 Mo. 499; Catterlin v. Lusk, 98 Mo. App. 187; Mensing v. Insurance Co., 36 Mo. App. 602. "Where a party signed an order for goods without reading it and in ignorance of its contents, he is bound by the terms of the writing." Mfg. & Importing Co. v. Carle, 116 Mo. App. 581; Powell v. Price, 111 Mo. App. 320; McNealy v. Baldridge, 106 Mo. App. 11.

STATEMENT.—On August 17, 1905, plaintiff applied to the defendant company for a twenty year term life insurance policy for $2,000, and executed to Joseph Mc-

Nearney, defendant's soliciting agent, his negotiable promissory note for $62, due in three months, in payment of the first annual premium on said policy. McNearney immediately sold the note for value to an innocent purchaser, to whom plaintiff paid the same at its maturity, as he was legally bound to do. The action is to recover the $62 so paid. Plaintiff alleges in his petition, that "defendant by its agent, Jos. McNearney, falsely and fraudulently represented and stated to the plaintiff that the form of life insurance policy then in use by defendant company and known as the '20 pay life dist. plan,' for each one thousand ($1,000) dollars on plaintiff's life provided for the payment of an annual premium of sixty-two dollars for the first three years and for the next seventeen (17) years a premium of five ($5) dollars each and at the end of twenty (20) years for payment to the insured if then alive of the full face of the policy.

"Plaintiff further says that he, believing said false and fraudulent representations and statements to be true, and being deceived thereby, was, by said deception and belief, induced to and did, at said time apply to defendant for a policy of two thousand ($2,000) dollars on his life on the said '20 pay life dist. plan' of the form then in use by defendant; and in payment of the first annual premium made, executed and delivered to defendant's agent, Jos. McNearney, his negotiable promissory note for the sum of sixty-two ($62) payable three (3) months thereafter; that said agent then and before maturity thereof, for a valuable consideration in the usual and ordinary course of business endorsed and delivered said note to National Bank of Mountain Grove; that said bank had no notice whatever of the fraud herein mentioned or any other defect or illegality whatever affecting the rights of the original parties to the said note; that thereafter, to-wit: on the ——— day of November, 1905, at the maturity of said note, plaintiff was

forced to and did pay the same to the said bank, the innocent purchaser thereof.

"Plaintiff further says that on the ——— day of September, 1905, he received through defendant's agent a policy purporting to insure his life for two thousand dollars on the '20 payment life dist. plan'; that the said policy is in the form which was in use by defendant company at the time said application was made; but the same does not contain any provisions by which the annual premium of sixty-two dollars shall be paid, only for the first three years, or thereafter and for the next seventeen (17) years the premium of only five ($5) per thousand each shall be paid, or at the end of said period of twenty (20) years the full face of the policy should be paid to the insured, if he should then be living; but on the contrary the said policy provides for a payment in advance of sixty-two dollars as a premium for one year's insurance and the annual renewal premium of sixty-two dollars on or before the twenty-eighth day of August, 1906, and of the payment of a like sum on or before the twenty-eighth day of August, in every year during the continuance of said contract and policy or until renewal premium for nineteen (19) complete years shall have been paid, and makes no provision whatever whereby the insured, in his lifetime shall be authorized to collect or receive the full face of said policy, under any circumstances whatever.

"Plaintiff further says that immediately upon receipt of said policy he examined the same and found that it did not comply with the description given him by defendant's said agent, as hereinbefore set forth, and thereupon he elected to avoid said policy and forthwith sent the same to defendant and requested a return of his said note or a protection against the payment thereof, which said request was refused and the policy sent back to plaintiff and he now tenders the same in court for use and benefit of plaintiff."

The answer was a general denial and the following affirmative defense:

"And for further answer defendant states that plaintiff made application in writing to defendant company for a $2,000 policy of insurance of the form then in use by defendant company known as the twenty pay life distribution plan upon plaintiff's life and agreed to pay defendant therefor a regular annual premium of $62; that it was also stated and said written application, among other things, as follows:

" '1. That the foregoing application shall be a consideration for and a basis of the contract of the National Life Insurance Company of the United States of America under any policy issued under this application.'

" '2. That inasmuch as only the officers of the company at its office in Chicago, Illinois, have the authority to determine whether or not a policy shall issue on any application and as they act on the written answer referred to, no statements, promises or information made or given by, or to, the person soliciting or taking this application for a policy, or by, or to, any other person, shall be binding on the company or in any manner affect its rights unless such statements, promises or information, be reduced to writing and presented in this application to the officers of the company at its home office.'

"And plaintiff at the same time and in connection with his said written application for said form of policy also signed and delivered to defendant another paper or certificate in which plaintiff stated, among other things, as follows:

" 'This is to certify that I have carefully examined sample policy and contract presented by Jos. McNearney, agent of the National Life Insurance of the U. S. of A., and have no hesitancy in recommending the same to all desiring life insurance or a good investment with

sound security which is offered by this company. I have made application to said company for $2,000 of insurance, on the twenty pay life plan and hold the company's receipt showing that I have settled with said agent for the first year's premium.

"And defendant further avers that relying upon the said written application and statements of plaintiff, defendant accordingly issued and delivered to plaintiff a policy of insurance on plaintiff's life in the sum of $2,000, it being the policy mentioned in plaintiff's petition as having been received by him from defendant company, and defendant further avers that said policy of insurance in all things conforms to the requirements of plaintiff's said written application and statement and is of the form which was then in use by defendant company, and defendant says that by reason of all and singular the premises aforesaid, plaintiff is not entitled to recover in this action and is estopped from claiming as against this defendant that he is and was entitled to receive a different form of policy which would conform to the alleged verbal promises and representations of defendant's alleged agent, the said Jos. McNearney."

The application for insurance and the certificate set out in the answer were filed with the answer.

Plaintiff offered evidence tending to prove the allegations of his petition. Defendant read in evidence plaintiff's application for insurance, and made proof that McNearney's agency was limited to soliciting insurance, taking applications therefor and collecting the first year's premium on policies. The evidence shows that McNearney was furnished with blank forms of the policy issued by defendant, and also tends to show that this form was seen by plaintiff at the time he made the application. Plaintiff swore he did not see the form of the policy and had no recollection that he ever saw or signed his application for insurance. He would not

admit or deny that he signed the application but admitted the signature "looked like" his. Plaintiff testified that at the time he applied for insurance he was engaged in the mercantile business and had been a schoolteacher.

At the close of all the evidence plaintiff moved for the following instruction, which the court refused:

"The court instructs the jury that the application and papers read in evidence by defendant do not constitute a defense, but can only be considered by you in determining whether at the time the note was signed by the plaintiff he knew the true terms and conditions of the policy applied for."

At defendant's request the court gave the following instruction:

"The jury are instructed that under the pleading and all the evidence the plaintiff is not entitled to recover, and your finding will therefore be for the defendant."

Plaintiff filed a timely motion for new trial and assigned as grounds therefor that the court erred in giving the jury a peremptory instruction that plaintiff could not recover, and also erred in refusing plaintiff's instruction. The motion was overruled and plaintiff appealed.

BLAND, P. J. (after stating the facts).—1. The first error assigned is that the court erred in admitting as evidence the application for insurance and the certificate set out in the answer. This error was not called to the attention of the court in the motion for new trial. It is a well settled rule of appellate practice in this State, that to authorize a review of any error alleged to have been committed by the trial court in the progress of the trial, it is indispensable that such error was called to the attention of that court in the motion for new trial. [State v. Kyle, 177 Mo. 659, 76 S. W. 1014;

Needles v. Ford, 167 Mo. 495, 67 S. W. 240; Redman v. Adams, 165 Mo. 60, 65 S. W. 300; Fender v. Haseltine, 106 Mo. App. 28, 79 S. W. 1018.] We therefore decline to notice this assignment of error.

2. Plaintiff's written application for insurance expressly provides that the applicant shall pay annual premiums at the rate of $62 per annum for the whole period of twenty years, and expressly stipulates that said "application shall be a consideration for and a basis of the contract under any policy issued under said application." Plaintiff alleged in his petition, and testified, that McNearney represented to him that he would only be required to pay an annual premium of $62 for three years and for the remaining seventeen years an annual premium of only five dollars, and that on the faith of these representations he signed and delivered to McNearney his note for $62. The question for decision, therefore, is whether plaintiff is bound by his written contract or whether the contract in writing can be contradicted by the verbal agreement made by plaintiff with McNearney as agent of the defendant company. The written contract is in evidence, unobjected to, and there is no allegation or proof that plaintiff was induced to sign it through fraud or deception, or that McNearney induced him to sign it without reading it, or that he practiced any artifice to conceal its contents from plaintiff. The written contract is therefore unassailed and unimpeached for fraud, mistake or deception. The law is well settled that a written contract is conclusively presumed to merge all prior negotiations and to express the final agreement of the parties, and that a party to such a contract will not be allowed to destroy the value of his written contract by testifying that though he signed it he did not read it or know its contents. As was said by ELLISON, J., in Johnson v. Insurance Co., 93 Mo. App. l. c. 591, "If a party is induced to sign a contract by fraud,

he can avoid it for that reason. But it is clear that merely falsely representing to a man in possession of his faculties and able to read, that a writing embodies their verbal understanding is not the fraud the law means. If it was, then no written contract could stand against the assault of either party. He would only need to say that it did not contain the agreement; and not containing the agreement, it is fraudulent; and being fraudulent, it can not be enforced. Thus a writing would be mere waste material and all stability of contract be at an end."

Under the evidence, defendant was clearly entitled to the peremptory instruction given by the court and the judgment is affirmed. All concur.