WALTER BROWN, Appellant, v. IRVING-PITT MANUFACTURING COM-
PANY, J. B. PITT and WILLIAM P. PITT.—292 S. W. 1023.

Division Two, March 14, 1927.

1. **LIMITATIONS: Fraud: Discovery.** The statute (Sec. 1317, R. S. 1919),
declaring that an action for relief on the ground of fraud shall be barred
in five years after the discovery of the fraud, allows to the aggrieved
party ten years in which to discover the facts constituting the fraud; but
he must use due diligence to discover the fraud, and that means that he is
deemed to know the facts which he should have known, and also the facts he
could have known by the exercise of ordinary care commensurate with the
circumstances.

2. ———: ———: ———: **Pleading: Facts to Relieve against Presumption
of Knowledge.** In an action for damages based on fraudulent misrepresen-
tations and concealment at the time the aggrieved party entered into the
contract by which he was defrauded, the rule relating to discovery, so as to
relieve the action from the bar of limitations, requires him to allege suf-
ficient facts to overcome the presumption of knowledge obtaining at the
time the agreement was consummated. A mere charge of ignorance at one
time and of subsequent knowledge at another, as well as mere silence, is
not sufficient to toll the statute; but to delete the presumption of knowledge,
the aggrieved party should allege facts sufficient to show the exercise of
due diligence to discover the fraudulent facts relied on, or that the means
of acquiring knowledge were beyond his power, or that an artifice or trick
to conceal was used, or that a fiduciary relation existed.

3. ———: ———: ———: ———: **Fiduciary Relation: President of Cor-
poration: Sale of Stock.** Where the parties dealt with each other at arm's
length, there was no fiduciary relation. In the sale of the stock of a cor-
poration to its stockholders its executive officers do stand in a confidential
relation to such stockholders. In an action for relief on the ground of
fraud, based on the issuance to plaintiff of a less amount of the capital
stock of a corporation than the amount to which he claims he was entitled,
allegations that the individual defendants were the executive officers of the
defendant corporation, and that the plaintiff, being entitled to one-third of
the stock, and the defendant president entered into an agreement by which
plaintiff was to receive more than his proportionate share of the preferred
stock and $12,500 in money and the individual defendants were to take the
common stock, do not show a fiduciary relation between plaintiff and the
president, but show that they were endeavoring to adjust their mutual
rights.

Corpus Juris-Cyc. References: **Limitations of Actions**, 37 C. J., Section
133, p. 792, n. 96; Section 309, p. 939, n. 2; Section 311, p. 945, n. 48; Sec-
tion 317, p. 947, n. 75; Section 751, p. 1235, n. 61, 62.

Appeal from Jackson Circuit Court.

AFFIRMED.

*William C. Michaels* and *James M. Johnson* for appellant; *Haff, Meservey, Michales, Blackmar & Newkirk* of counsel.

(1) For the purposes of the demurrers the allegations of the petition must be accepted as true and liberally construed. Sec. 1257, R. S. 1919; Stillwell v. Hamm, 97 Mo. 579; Hood v. Nicholson, 137 Mo. 400; Erwin v. Commerce Co., 204 S. W. 820. (2) The allegations of the petition disclose the existence of all of the elements of a cause of action for fraud and deceit. The fact that all of the patents obtained by Irving and Pitt after the incorporation of the company belonged to the company and not to them individually was material. The representation that they were the property of the defendants individually was false, was known to the defendants to be false, was made for the purpose of deceiving plaintiff and his assignors, was relied upon by them, and was the inducing cause of the sale of their stock for $110,000 par value of the preferred stock, and they were justified in relying on the statements of defendants respecting such matters which were peculiarly within the knowledge of defendants. Judd v. Walker, 114 S. W. 979; Funding & Foundry Co. v. Heskett, 125 Mo. App. 516; Pomeroy v. Benton, 57 Mo. 531. (3) Since defendants, Irving and Pitt were the executive officers of the corporation and knew the facts respecting the ownership of the patents, they occupied a fiduciary relation to the minority stockholders who had no knowledge of such facts and were bound to make full and true disclosures to the minority stockholders respecting the property of the company. Pomeroy and Benton, 57 Mo. 531; Oliver v. Oliver, 118 Ga. 362; Ritchie v. McMullen, 79 Fed. 522. (4) Limitations did not begin to run against the cause of action pleaded in the petition until the discovery of the fraud, and plaintiff was entitled to bring this action at any time within five years from such discovery. McClain v. Parker, 129 S. W. 506; 27 C. J. 26; Cottrell v. Krim, 100 Mo. 397; Pomeroy v. Benton, 57 Mo. 531.

*Wendell H. Cloud* and *Morrison, Nugent, Wylder & Berger* for respondents Irving-Pitt Mfg. Co. and J. B. Irving. *W. S. Flournoy* for respondent William P. Pitt; *Wendell H. Cloud, E. R. Morrison* and *H. L. Hassler* of counsel.

If the petition be construed as stating facts sufficient to constitute a cause of action in fraud and deceit, nevertheless it appears on the face of the petition that such cause of action accrued more than five years before the commencement of this suit and is barred by the Statute of Limitations. Sec. 1317, R. S. 1919; Mester v. Jones, 286 Mo. 56; State ex rel. v. Yates, 231 Mo. 290; Heisler v. Clymer, 179 Mo. App. 110; Bent v. Priest, 86 Mo. 475; Johnson v. United Rys.

Co., 243 Mo. 278; Callan v. Callan, 175 Mo. 346; Shelby Co. v. Bragg, 135 Mo. 291; Wood v. Carpenter, 101 U. S. 135; Scott & Bowker v. Boswell, 136 Mo. App. 601; Powell v. White, 170 Mo. App. 598; Hays v. Smith, 213 S. W. 455; Cotrill v. Krum, 100 Mo. 397; Pomeroy v. Benton, 57 Mo. 531; McLain v. Parker, 229 Mo. 68.

DAVIS, C.—This is an action based on fraud. The defendants filed separate but like demurrers, which the trial court sustained, and, plaintiff refusing in open court to plead further in said cause, final judgment in favor of defendants was rendered, plaintiff appealing therefrom.

The petition omitting caption and signatures, reads thus:

"(1) . Plaintiff states that he is assignee of all of the rights and claims of Amelia Brown, C. A. Brown and Etta M. Brown under the contract hereinafter mentioned.

"(2) Plaintiff states that prior to June 13th, 1913, he and his said assignors owned common stock of the Irving-Pitt Manufacturing Company, a Missouri corporation, of the par value of $9,900; that defendant J. B. Irving at all the times mentioned herein was the president of said company.

"(3) That on June 13th, 1913, plaintiff and his said assignors and the defendant J. B. Irving, acting for himself and for the other defendants herein, made a written contract, a copy of which is attached hereto and marked 'Exhibit A;' that by the terms of said contract, it was agreed that either a new company was to be organized with a larger amount of capital stock to take over the assets and properties of the Irving-Pitt Manufacturing Company, or that the capital stock of the said company be increased and that plaintiff and his assignors make an exchange of their then holdings of the common capital stock of said company for preferred stock to be issued by any new company so organized, or out of the increase of the capital stock of defendant company, and that if the capital stock should be increased, $200,000 thereof should be seven per cent preferred stock and that plaintiff and his said assignors were to exchange their said common stock for $110,000 par value of such preferred stock; that $90,000 of preferred stock should be sold at par and that a new corporation, or an increase of said capital stock of the old corporation should be completed within four months from July 1st, 1913; that thereafter on June 21st, 1913, the parties amended and supplemented said agreement by a writing dated June 21st, 1913, signed by defendant J. B. Irving, a copy of which agreement of June 21st, 1913, is marked 'Exhibit B,' attached hereto and made a part hereof, whereby it was agreed that in addition to said preferred stock to be issued in exchange for said common stock, plaintiff was to be paid in cash the difference between the sum of $12,500, less

316 Mo.—65.

the cost of a reorganization mentioned in the original agreement of June 13th, 1913, and the sale of the $90,000 preferred stock; that at the time said supplementary agreement was signed, the said J. B. Irving was acting for and on behalf of all the defendants herein.

"(4)   That before plaintiff and his said assignors entered into the said agreement and amendment, the said J. B. Irving, acting for all the defendants herein, submitted to plaintiff a copy of the financial statement of April 30th, 1913, of said company and represented to plaintiff that it was a correct and true statement of the assets and liabilities of said company; that a copy of said financial statement is marked 'Exhibit C' and attached hereto and made a part hereof; that in the item of assets in said financial statement, the patents owned by said company were valued at $50,000 and that the total assets of said company were $624,333.49; that plaintiff, acting for and on behalf of himself and said assignors relied upon said statement and thereupon signed the agreements aforesaid of June 13th and June 21st, 1913; that in truth and fact the said Irving-Pitt Manufacturing Company was at said time the owner of patents worth and valued at $450,000 in excess of the $50,000 specified in said financial statement and that plaintiff and his said assignors, by virtue of owning one-third of the common stock of the said Irving-Pitt Manufacturing Company, were entitled to $150,000 of said excess value of said patents; that the said J. B. Irving represented that there was no value in said excess patents belonging to said company because they were patents not assigned to said company and were not assignable to said company, having been taken out by defendant Irving and defendant Pitt, and plaintiff relied on said statements and did not learn until 1923 that at the time of the organization of said corporation in 1904, said defendants Irving and Pitt had made an agreement to the effect, as he is now advised, that all patents taken out by defendants Irving and Pitt, or either of them, at any time after 1903 in connection with the business of said company should become the property of defendant company; that if he had known of said agreement or the effect thereof, and of facts as they were, neither he nor his said assignors would have entered into said contract of June 13th, 1913, and said amended agreement; that when the said capital stock of said company was increased, $450,000 of said stock was issued to defendants Irving and Pitt as presumed sole owners of said patents, when in truth and fact said patents belonged to said company and that plaintiff and his assignors by virtue of owning one-third of the common stock of said company before said increase, was entitled to one-third of said $450,000.

"That by reason of the premises the defendants and each of them are indebted to the plaintiff in the sum of $150,000, with lawful interest thereon; that demand has been made therefor and that no

part of said amount has been paid, for which sum with lawful interest and costs he prays judgment against defendants and each of them.''

The only ground of the demurrer which we need notice follows: ''That said petition does not state facts sufficient to constitute a cause of action in favor of plaintiff and against this defendant, in that it appears from the face of said petition that the plaintiff's cause of action, if any he had, accrued more than five years before the commencement of this suit and has become completely barred by the Statute of Limitations.''

I. Defendants aver the petition shows on its face that the action was barred by limitation. The portion of the statute apposite, Section 1317, Revised Statutes 1919 reads: ''Within five years: . . .

**Pleading.** fifth, an action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.''

To support their position that the petition shows the action for fraud was barred by limitation, defendants assert, first, a cause of action accrues when plaintiff discovers the fraud or when by proper diligence as an ordinarily prudent man, he, under the circumstances, should have discovered it. Second, a party seeking to avoid the bar of the statute on account of fraud must aver and show that he showed due diligence to detect it, and if he had the means of discovery in his power he will be held to have known it; plaintiff must set out in his petition facts showing diligence on his part to discover the fraud, or that defendant was guilty of some active conduct in thwarting investigation. Third, such action must be brought within five years of the discovery of the facts constituting fraud. Defendants contend the following cases maintain their position: Mester v. Jones, 286 Mo. 56; State ex rel. v. Yates, 231 Mo. 276; Heisler v. Clymer, 179 Mo. App. 110; Bent v. Priest, 86 Mo. 475; Johnson v. United Railways Co., 243 Mo. 278; Callan v. Callan, 175 Mo. 346; Shelby County v. Bragg, 135 Mo. 291; Scott v. Boswell, 136 Mo. App. 601.

The only charge in the petition regarding the discovery of the fraud is as follows: That plaintiff did not learn until 1923 that, at the time of the organization of said corporation in 1904, said defendants Irving and Pitt had made an agreement to the effect, as he is now advised, that all patents taken out by defendants Irving and Pitt, or either of them, at any time after 1903 in connection with the business of said company should become the property of defendant company.

It is apparent that the limitation is conditioned on the aggrieved party having ten years to discover the fraudulent facts. The con-

dition of ten years, however, is subject to the rule that one shall be deemed cognizant of or conversant with facts that should have been known, and one is held to have known facts that he could, by the exercise of ordinary care commensurate with the circumstances, discover by due diligence or the means within his power.

The general doctrine relative to discovery of fraud, so as to take it without the bar of the statute, is to plead facts sufficient to relieve the pleader of the presumption of actual knowledge obtaining at the consummation of the agreement. A general charge of ignorance at one time and of subsequent knowledge at another, as well as mere silence, is insufficient to toll the statute. Something further must be shown. To delete the presumption, the pleader should aver facts sufficient to show the exercise of requisite care and due diligence to discover the fraudulent facts relied on, or that the means of acquiring knowledge were without his power, or that an artifice or trick to conceal was used, or that a fiduciary relation existed. When discovery is relied upon to toll the statute, the pleading should aver when it was made, what it was, how it was made and why it was not made sooner. [Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807.]

The record develops that this suit was filed on June 12, 1923, while the petition states that the representation was made before June 13, 1913. Unless the petition demonstrates that a fiduciary relation existed, of which more later, the petition avers nothing as to the discovery of the fraud except a bald statement that plaintiff did not learn until 1923 of the agreement of Irving and Pitt relative to patents taken out after 1903 in connection with the business of the company becoming the property of the company. The pleading fails to show whether the agreement relied on was parole or in writing, or its terms further than herein set forth, or whether it was enforcible and was still in force in 1913, or whether it was based on a valuable consideration, or whether there was actually such an agreement, or whether any patents were taken out after 1903 or were taken out in connection with the business of the company.

In Wood v. Carpenter, supra, the court say: ''In this class of cases the plaintiff is held to stringent rules of pleading and evidence, 'and especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether by ordinary diligence the discovery might not have been made before.' [Stearns v. Page, 7 How. 819, 829.] 'This is necessary to enable the defendant to meet the fraud and the time of its discovery.' A general allegation of ignorance at one time and of knowledge at another are of no effect. If the plaintiff made any par-

ticular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner.''

. It is apparent from the reading of the petition that the facts related therein not only fail to show any diligence on the part of plaintiff to discover the fraud, but affirmatively tends to show a lack of any diligence.

In order to avoid the running of the statute it may be shown that some trick or artifice was used to prohibit the defrauded party from inquiring or making investigation regarding the fraud; or it must be shown that the defrauded party was prevented from inquiring about the particular acts of concealment. As it is necessary to prove these facts, it is necessary to plead them.

In State ex rel. v. Yates, 231 Mo. 276, the court, quoting from Wood v. Carpenter, supra, say: ''The fraudulent concealment avoiding the running of the statute must go beyond mere silence. It must be something actually done or said directly intended to prevent discovery—some active conduct in thwarting investigation (Smith v. Blachley, 198 Pa. St. 173). In Stone v. Brown, 116 Ind. l. c. 81, the exposition of the matter was as follows: 'As has often been declared, the Statute of Limitations is a statute of repose, and in order to bring a case within the section above referred to, and avoid the operation of the statute, something more than silence, or mere general declarations or speeches, on the part of the person liable, must be shown. It must appear that some trick or artifice has been employed to prevent inquiry or elude investigation or calculated to mislead and hinder the party entitled from obtaining information, by the use of ordinary diligence, that a right of action exists; or it must appear that the facts were misrepresented to or concealed from the party, by some positive acts or declarations, when inquiry was being made or information sought, and the particular acts of concealment or misrepresentation made must be set out in the pleading.' Beside, 'the circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence.' ''

In the instant case, the petition avers nothing relative to defendants' concealment of the fraud, by means of any trick or artifice, so as to prevent its discovery by plaintiff.

We again think it is apparent from the petition, relative to the representation that there was no value belonging to the company in the patents because they were not assigned or assignable to the company, that plaintiff had actual notice of facts regarding the alleged fraud that put him on his inquiry. In passing, we may say that we infer from the whole petition that it was represented to plaintiff that the so-called ''excess patents'' were owned by Irving and Pitt. That plaintiff had sufficient notice to put him on his inquiry

is shown by the averments that the patents were valued in the financial statement at $50,000, and that the common stock of the Irving-Pitt Manufacturing Company, upon the increase of the capital stock, was to belong to Irving and Pitt. We further infer from the petition that $450,000 of the common stock was issued to Irving and Pitt during the year 1913 in payment of patents presumed to have been owned by them, but alleged by the plaintiff to have been owned by the company. It is not alleged that this transaction was concealed in any way. It may be presumed that plaintiff and his assignors were men of ordinary intelligence. According to the petition he knew that Irving and Pitt were receiving $450,000 par value of the capital stock of the company, in payment of the patents, which they stated they owned. As a stockholder, the books of the company were open to plaintiff as well as all papers. A suit in court by plaintiff would have obviated a denial of his rights by Irving and Pitt, if any was made, to inspect the books, papers and documents of the corporation. We think an ordinarily prudent man would have inquired and investigated the right of the company to issue to others stock of the par value of $450,000 in payment of patents, especially since the means of inquiry were open to him.

II. Plaintiff maintains that, inasmuch as the petition alleges that Irving was the president of the company, a fiduciary relation existed, and cites Oliver v. Oliver, 118 Ga. 362; Baird v. Grannis, 208 Mo. 434; Mulvane v. O'Brien, 58 Kan. 463; Stewart **Fiduciary Relation.** v. Wyoming Cattle Ranch Co., 128 U. S. 383; Chetlain v. Ins. Co., 86 Ill. 220; Walsh v. Goulden, 130 Mich. 531; McLain v. Parker, 229 Mo. 68, as precedents in his behalf. Plaintiff contends that Irving and Pitt as chief executive officers of the corporation were required to make full and accurate disclosures respecting the financial condition of the company and the assets which it owned, for the minority stockholders were in a situation where they were compelled to rely upon the statements of defendants; that the individual defendants controlled the corporation, directed the books and records that were to be kept and the entries that were made therein, and obviously suppressed the facts from the books that the subsequent patents belonged to the company, since the financial statement prepared from the books failed to show the true facts respecting these patents.

It is evident, however, that plaintiff and defendants were dealing at arm's length with respect to the stock each was to receive upon the increased capitalization. Plaintiff was a stockholder, entitled to examine the books, documents and papers. It is clear from the petition that both plaintiff and defendants were maintaining they were each entitled to a certain proportion of the stock in the adjustment

of their mutual rights. This was a matter of agreement. They agreed that plaintiff was to receive more than his proportionate one-third part of the preferred stock and in addition thereto the sum of $12,500, while defendants were to take the common stock. It was the duty of plaintiff then and thereafter to investigate and determine his rights. If he did not do so, the fault lay with him. We find no evidence of a fiduciary relation existing. Plaintiff cites Baird v. Grannis, 208 Mo. 426, to support his contention, but the point here at issue is not there decided, although many cases cited in respondent's brief in that case determine that a confidential relation between an officer of a corporation and a stockholder so far as a sale of stock between them is concerned does not obtain, and an officer of a corporation may buy and sell its stock like any other individual.

In Ritchie v. McMullen, 79 Fed. 522, the court holds: "The fact that the pledgee of stock owns other stock in the same company, or he is a director or officer therein, does not impose any greater duty upon him, in respect to the stock pledged, than if he had no relation to the company at all."

In Walsh v. Goulden, 130 Mich. 531, it is said: "Directors, of course, stand in a fiduciary relation to the corporation itself. They do not stand in that relation, however, when dealing with other stockholders for the purchase or sale of stock."

In Hooker v. Midland Steel Co., 215 Ill. 444, it is stated: "A director, however, does not sustain that relation (trustee) to an individual stockholder with respect to his stock, over which he has no control whatever, but he may deal with an individual stockholder and purchase his stock practically on the same terms as a stranger. In the absence of actual fraud such a purchase will not be set aside for a mere failure to disclose any information the director may have affecting the value of the stock."

We do not think the cases cited by plaintiff are applicable to the facts here involved.

We see no need of prolonging the discussion. It results from what we have said that plaintiff's cause of action is barred by the Statute of Limitation. We therefore affirm the judgment. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.