**BLACK LEAF PRODUCTS COMPANY, Appellant,**

v.

**CHEMSICO, INC., Respondent.**

**No. 47426.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 17, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Sept. 18, 1984.

Application to Transfer Denied
Nov. 20, 1984.

Richard L. Murray, Clayton, for appellant.

J. Roger Edgar, St. Louis, for respondent.

REINHARD, Judge.

Plaintiff filed this action on January 4, 1983, seeking damages for breach of warranty because of an alleged defect in 25,000 aerosol cans of house plant spray sold to plaintiff by defendant. Defendant filed a motion to dismiss or, in the alternative,

for summary judgment, alleging *inter alia* that plaintiff's cause of action was barred by the four year statute of limitations, § 400.2–725, RSMo.1978, because plaintiff discovered or should have discovered the breach of warranty before January 4, 1979. In support of the motion defendant submitted eleven exhibits, which included the deposition of plaintiff's purchasing agent, Russell F. Sawyer. The trial court sustained defendant's motion, and plaintiff appeals. We affirm in part and reverse and remand in part.

We note that under Rule 55.27, when matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss is to be treated as one for summary judgment. Under Rule 74.04, summary judgment is to be rendered only when it is clear from the pleadings, depositions, admissions on file, and any affidavits that there is no genuine issue of material fact. In reviewing the rendition of a summary judgment, the appellate court must scrutinize the record below in the light most favorable to the party against whom summary judgment was rendered, and resolve all doubts in favor of that party. *Edwards v. Heidelbaugh*, 574 S.W.2d 25, 27 (Mo.App.1978). The burden is on the moving party to demonstrate by unassailable proof that there is no genuine issue of material fact. Rule 74.04(h); *Cooper v. Yellow Freight Systems*, 589 S.W.2d 643, 645 (Mo.App.1979). If no genuine issue of material fact exists, the movant is entitled to summary judgment as a matter of law.

The record reveals that plaintiff Black Leaf, Inc. was a distributor of insecticides, herbicides, fungicides and rodenticides and was located in suburban Chicago, Illinois. It had no manufacturing capacity. In February, 1978, plaintiff solicited bids for the manufacture of 25,000 cans of aerosol house plant spray. Specifications were to be based on an accompanying sample can which was made with a soldered seam. Defendant Chemsico, Inc. supplied the lowest bid, which plaintiff accepted. Defendant expressly warranted the product for two years against defects in quality or workmanship. Defendant filled the order with cans with a welded seam which it purchased from American Can Company. The cans were delivered to plaintiff and accepted in June and July of 1978, and stored in plaintiff's warehouse. Plaintiff did not inspect the cans at the time of receipt.

From the warehouse, cans were shipped as needed to fill orders from plaintiff's customers. Plaintiff began to receive complaints from its customers that the cans leaked. Plaintiff handled the complaints by giving credits, by writing debit memos, or by sending replacement cans to the customers. Plaintiff's records indicate that in September of 1978, plaintiff credited three customers' accounts for leaking cans sold from among the cans that defendant had shipped to plaintiff. Other similar credits were given in October, November and December; the result was a total of 42 defective cans for which credit had been given and documented by the end of that year.

In addition, some of the cans of spray leaked within plaintiff's warehouse. Sawyer stated that the company realized there was a problem by November 21, 1978. On that date, Sawyer mailed one of the leaking cans to defendant with a notice that plaintiff was repacking boxes because some of the cans had leaked and soaked the boxes. The notice also stated that several empty cans had been found. Later, Sawyer noted on his copy of the notice that seven more cans were thrown out on December 2, and 31 more on January 2. Sawyer further stated that defendant answered the notification by instructing plaintiff to keep a record of how many cans were thrown out and to let defendant know how serious the problem became.

In all, plaintiff's records show that at a minimum 39 cans were thrown out prior to January 5, 1979. Repacking of boxes continued as more leakage was discovered. Sawyer stated that the repacking of cans

was done on an "as-needed" basis, so that if there was additional leakage the repacking would not have been futile. As more cans leaked, some cases had to be repacked several times. Plaintiff continued shipping the product from the warehouse to its customers through February of 1979. The repacking stopped around March of 1979.

Sawyer stated that he phoned and wrote defendant's administrator and president in St. Louis to inquire further about the problem, but could rarely get a response and those responses he did get were contradictory. Finally in the spring of 1979, Sawyer requested the can manufacturer, American Can Co., to examine a sample can and analyze the problem. American responded on April 18, 1979 that the leakage was due to a chemical reaction between the spray and the welded seam. The spray apparently ate through the seam and leaked through tiny pin holes. American's analysis indicated that if the seam on the inside of the can had been coated with epoxy before the can was filled, the leakage would not have occurred. Also, according to plaintiff, the leakage would not have occurred with a soldered seam.

Plaintiff had previously ordered cans from defendant. It had never had this problem with defendant or with cans purchased from any other supplier. Sawyer admitted that he could tell the difference between a welded seam and a soldered seam. Plaintiff now requires its orders be filled with either a soldered seam or a coated welded seam.

■ From these facts, we must determine whether the statute of limitations had expired before the filing of this lawsuit. Section 400.2–725, RSMo.1978, provides that an action for breach of warranty must be commenced within four years of the accrual of the cause of action. *See Clevenger & Wright v. A.O. Smith Harvestore Products, Inc.*, 625 S.W.2d 906, 908 (Mo. App.1981). The four year period begins to run upon delivery of the goods unless the goods were sold with a warranty for future performance; in such case, the statute of limitations runs from the date on which the defect was or should have been discovered. § 400.2–725, RSMo.1978.

■ Under Missouri law, a warranty that a product is free from defect in quality or workmanship (as is present here) is a warranty for future performance of the product. *See Wilbur Waggoner Equipment and Excavating Co. v. Clark Equipment Co.*, 668 S.W.2d 601, 602 (Mo.App. 1984) (citing *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818 (8th Cir. 1983)). Because such a warranty was made in the present case, the statute of limitations began to run at the time the breach was or should have been discovered. Clearly, as to those cans that leaked prior to January 4, 1979, the action is barred because the breach was discovered more than four years before the filing of this action. The issue is whether plaintiff should have discovered the defect in the remaining cans before that time; if so, the action is barred completely.

For purposes of determining the point at which a party should have discovered a breach, there are no Missouri cases setting out a basis for decision under § 400.2–725(2), RSMo.1978. Indeed, there are no cases on point in any of the jurisdictions that have adopted the Uniform Commercial Code. However, a similar standard exists in a fraud action in Missouri; under § 516.-120(5), RSMo.1978, the cause of action for fraud is "deemed not to have accrued until the discovery by the aggrieved party [of the facts giving rise to the action]...." Missouri cases have construed this statute of limitations to begin to run "from the date when they knew or should have discovered the controlling facts." *Harding v. Modern Income Life Ins. Co.*, 593 S.W.2d 568, 571 (Mo.App.1979). *See also Brown v. Irving-Pitt Mfg. Co.*, 316 Mo. 1023, 292 S.W. 1023, 1025 (Mo.1927); *Ludwig v. Scott*, 65 S.W.2d 1034, 1036 (Mo.1933). Thus, the construction is similar to that

under § 400.2–725, RSMo.1978, and the development of the standard in fraud cases provides a useful analogy.

▪ The Missouri Supreme Court has stated that one is held to have discovered facts when he could have discovered them with the exercise of ordinary care or due diligence in the circumstances. *Brown v. Irving-Pitt Mfg. Co.*, 316 Mo. 1023, 292 S.W. 1023, 1025 (Mo.1927). Generally, a party cannot avoid the bar of the statute of limitations if he had the means to discover the facts giving rise to his action. *Briece v. Bosso*, 158 S.W.2d 463, 467 (Mo.App. 1942). "There must be reasonable diligence; and the means of knowledge are the same thing in effect as knowledge itself." *Id.*

▪ Applying that analogous standard to the present case calls for an assessment of the facts on record as they were available to plaintiff prior to January 4, 1979. While plaintiff possessed all of the cans from July, 1978, the defect in the cans was latent. Even if plaintiff had noticed the difference between the soldered seam can which was ordered and the welded seam which was supplied, there was no reason to suspect that it was the cause of the leakage. Plaintiff had never experienced this problem before. It first turned to defendant for assistance, but failed to receive cooperation. Only then, in the spring of 1979, did it turn to the can manufacturer. It was not until April 18, 1979 that plaintiff learned the cause of the leakage. We cannot say that plaintiff did not act with due diligence or ordinary care in discovering the cause of the leakage.

Neither can we say that enough cans had leaked by January 4, 1979 that even though plaintiff did not know the cause of the problem, it was on notice that the entire shipment of 25,000 cans was defective. By January 5, from the record before us, plaintiff had documented the leakage of only 80 cans out of 25,000. This was less than ⅓ of 1% of the total shipment. Moreover, by

that date, plaintiff apparently felt the problem did not extend to the entire order because it continued to ship the product to its customers in January and February of 1979.

Viewing the record in the light most favorable to plaintiff for purposes of summary judgment, we cannot say as a matter of law that plaintiff should have discovered the breach of warranty before January 5, 1979. We therefore affirm only as to those cans the defects of which were actually discovered prior to January 5, 1979; as to the claim for the remaining cans, we reverse and remand for further proceedings.

KAROHL, P.J., and CRANDALL, J., concur.