Nelson W. HAYWARD, Trustee, Appellant,

v.

Shannon L. ARNOLD, et al., Respondents.

No. WD 41512.

Missouri Court of Appeals, Western District.

Nov. 7, 1989.

Nelson W. Hayward, Independence, pro se.

George E. Kapke, Independence, for respondent Sec. Finance Corp.

Joel B. Laner, Kansas City, for respondents Hanson.

Before SHANGLER, P.J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

Nelson W. Hayward, trustee of the Emma Smith Memorial Trust, and his wife, Fairy R. Hayward, brought suit to set aside deeds executed on March 19, 1981, by Nelson W. Hayward and Pearle I. Dowler, trustees of the Emma Smith Memorial Trust, conveying two parcels of real estate in Independence, Missouri.[1] One of the properties, located at 1709 Hands, was conveyed to Shannon Arnold, to whom Hayward mistakenly thought himself married. The other property, located at 332 East South, was conveyed to Stephen S. Arnold, the minor son of Shannon Arnold. A third tract was also deeded to Stephen S. Arnold, but it is not involved in this lawsuit.

Stephen S. Arnold on November 24, 1981, conveyed the 332 East South property to Stephen D. Arnold, Shannon Arnold's husband and we presume Stephen S. Arnold's father. Shannon Arnold on November 24, 1981, conveyed 1709 Hands to the same Stephen D. Arnold. The present action to set aside the deeds from the trust to Shannon and Stephen S. Arnold was originally filed only against the three Arnolds as defendants.

Stephen D. Arnold, joined by Shannon Arnold, conveyed 332 East South to defen-

---

**1.** The presence of Fairy R. Hayward as a party and the absence of Pearle I. Dowler as a party are unexplained. The terms of the Emma Smith Memorial Trust, including the authority of the trustees to make gratuitous conveyances are nowhere shown in the record.

**344**

dants Daniel M. Hanson and Lilly B. Hanson on April 2, 1985. Daniel M. Hanson and Lilly B. Hanson were not originally defendants, but became parties by way of intervention as a matter of right under Rule 52.12(a). They are the record title holders of 332 East South and, they claim, the good faith purchasers for value thereof, without notice of plaintiffs' claims.

On July 18, 1986, Stephen D. and Shannon Arnold executed a deed of trust conveying the 1709 Hands property to defendant Security Pacific Finance Corporation to secure the payment of a promissory note in the sum of $28,677. Security Pacific later (January 28, 1988) bought the property at foreclosure sale for $36,000, which was the total of the unpaid balance of the note and taxes and expenses advanced by Security Pacific. Security Pacific Finance Corporation was added as a defendant by amendment to the petition. Security Pacific claims to be the good faith purchaser of 1709 Hands for value without notice of plaintiffs' claims.

The trial court disposed of plaintiffs' lawsuit by dismissal with prejudice of the petition as against Security Pacific on July 19, 1988; by grant of summary judgment to the Hansons on August 5, 1988; and by dismissal with prejudice of the claims against the Arnolds on November 15, 1988.

Plaintiffs have appealed.

### Claim against Security Pacific for 1709 Hands Property

The dismissal with prejudice of plaintiffs' petition against Security Pacific was made upon Security Pacific's motion. The court did not give its reason for the dismissal. The motion to dismiss was based upon two grounds—that plaintiffs' claim was barred by the five-year statute of limitations, and that Security Pacific was an innocent purchaser for value of 1709 Hands, without notice of plaintiffs' claims.

■ As to the statute of limitations defense, the case is not governed by the five-year statute, section 516.120, RSMo 1986, as claimed in Security Pacific's motion to dismiss, but is governed by the ten-year statute, section 516.010, RSMo

1986; Coleman v. Alderman, 357 Mo. 758, 210 S.W.2d 994, 995 (1948); Parish v. Casner, 282 S.W. 392, 408–09 (Mo.1926).

Plaintiffs' petition does not show that their equitable claim to the 1709 Hands property as against Security Pacific is cut off by Security Pacific's status as a bona fide purchaser for value without notice of plaintiffs' claims; the ground for that defense must be sought outside plaintiffs' petition. We will therefore treat the dismissal as a summary judgment. Rule 55.-27; Wehmeier v. Triplett, 741 S.W.2d 732, 733 n. 1 (Mo.App.1987); In re Marriage of Harrison, 734 S.W.2d 934, 938 (Mo.App. 1987); Black Leaf Products Co. v. Chemsico, Inc., 678 S.W.2d 827, 829 (Mo.App. 1984).

Summary judgment is appropriate only where "pleadings, depositions, answers to interrogatories, and admissions on file, together with the [supporting] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.04(c); Chapman v. Auto–Owners (Mutual) Insurance Co., 684 S.W.2d 335, 336 (Mo.App.1985); Black Leaf Products Co. v. Chemsico, Inc., 678 S.W.2d 827, 829 (Mo.App.1984); Kostelac v. Triangle Transfer Co., 668 S.W.2d 621, 622 (Mo.App.1984). We review the evidence in the light most favorable to the party against whom the summary judgment was granted. Scott v. Thornton, 484 S.W.2d 312, 314 (Mo.1972); White v. American Republic Insurance, 726 S.W.2d 357, 360 (Mo.App.1987); Fisher v. Scott & Fetzer Co., 664 S.W.2d 662, 663 (Mo.App.1984); City of St. Joseph v. Kaw Valley Tunneling, Inc., 660 S.W.2d 26, 28 (Mo.App.1983).

■ We reverse the summary judgments in favor of the Hansons and Security Pacific, respectively, because the facts before the trial court and before us are so sparse it is impossible to tell if there is any genuine issue of material fact. Rule 74.04(c) contemplates a more nearly complete development of facts which foreclose the reasonable prospect of a genuine factual issue. The facts presented here, as we explain in

succeeding paragraphs, are preliminary and tentative and do not justify summary judgment.

The facts disclosed by the file before the trial judge and before us are as follows:

Nelson W. Hayward was briefly married to Shannon Arnold, or mistakenly thought he was. They were married January 14, 1981, and lived together until April 10, 1981. Later, Shannon produced what purported to be a Mexican divorce decree dated November 19, 1981. Hayward claims this purported Mexican divorce decree was counterfeit. Hayward later, on November 7, 1983, got a Missouri divorce from Shannon. The fact was, however, Shannon was before, during and after her supposed marriage to Hayward actually married to Stephen D. Arnold.

During the four-month period that Hayward and Shannon lived together after their sham marriage, Hayward and Pearle I. Dowler as trustees of the Emma Smith Memorial Trust made the earlier-described conveyances—to Stephen S. Arnold of the 332 East South property and to Shannon Arnold of the 1709 Hands property. Plaintiffs in their amended petition allege that each conveyance was "fraudulent, and was made in the absence of any consideration whatsoever, which was due to the undue pressure and influence that was being exercised upon [Hayward] by Shannon L. Arnold." Each parcel was conveyed by quit-claim deed, each deed containing the following restriction: "This Deed subject to the conditions of prior agreement."

As noted above, the Arnolds on July 18, 1986, executed the deed of trust conveying to Security Pacific Finance Corporation the property at 1709 Hands. By this time the Arnolds lived in California, and have apparently continued to live there. They defaulted in the payment of the note secured by the 1709 Hands deed of trust, and the property was finally sold at foreclosure sale on January 28, 1988.

It appears from the record that plaintiff Nelson W. Hayward occupied 1709 Hands as his residence during the entire time, that is, at the time of making the initial conveyance thereof to Shannon Arnold and at all times subsequent thereto.

Security Pacific may have been a good faith purchaser for value without notice of Hayward's claim, but the record before the trial court and before us does not show it. It does not show the contrary, either. Some facts appear which it seems would have put a buyer upon inquiry and would have led to the discovery of Hayward's claim. For example, the restriction which appeared in the quit-claim deed from the Emma Smith Memorial Trust to Shannon Arnold, that the conveyance was "subject to the conditions of prior agreement". Such a provision in a recorded deed gives notice to the world not only of the contents of the deed itself, but of anything which a reasonable inquiry might reveal. *Hamrick v. Herrera*, 744 S.W.2d 458, 461 (Mo.App. 1987); *Knutson v. Christeson*, 684 S.W.2d 549, 551–52 (Mo.App.1984); *Walkup v. Evinger*, 653 S.W.2d 383, 390 (Mo.App.1983). Hayward says in his amended petition that the "prior agreement" referred to in the deed was that title to the property was to be kept in the grantee Shannon Arnold until it was returned to the trust. Security Pacific would have discovered the terms of the "prior agreement" had it made some inquiry. It therefore took 1709 Hands subject to the terms of such "prior agreement".

■ Furthermore, the purchaser of the property takes subject to the rights of anyone in actual possession. *Karsznia v. Kelsey*, 262 S.W.2d 844, 846 (Mo.1953); *Hallauer v. Lackey*, 188 S.W.2d 30, 34 (Mo. 1945); *Woodbury v. Connecticut Mutual Life Insurance Co.*, 166 S.W.2d 552, 554–55 (Mo.1942); *Langford v. Welton*, 48 S.W.2d 860, 863 (Mo.1932); *Ballenger v. Windes*, 99 S.W.2d 158, 159 (Mo.App.1936). A purchaser may not plead lack of notice of the claims of an occupant. It appears, as noted above, that Hayward at all times has occupied 1709 Hands as his residence. His claims would have been discovered by Security Pacific if it had made some inquiry.

*Claim against the Hansons for 332 East South Property*

■ The Hansons defend their summary judgment on the ground that they were

good faith purchasers of the 332 East South property without notice of plaintiffs' equitable claim. The record does not show that there is no genuine issue as to their status as innocent purchasers for value without notice of plaintiffs' claims nor that the Hansons are entitled to judgment as a matter of law. Rule 74.04(c).

The Hansons maintain that the plaintiffs' purported "lis pendens", filed July 12, 1982, and which was still on file when Hansons purchased the 332 East South property on April 2, 1985, did not furnish constructive notice of plaintiffs' claim. This "lis pendens" was recorded in the Office of the Recorder of Deeds and purported to give notice that plaintiff "is preparing a civil action" against the Arnolds affecting the 332 East South property.

Hayward's lawsuit was not pending at the time he filed the lis pendens nor at the time the Hansons acquired title to the property; the present suit was filed on February 10, 1987.

While the "lis pendens" furnished no constructive notice of a lawsuit which was not pending when the Hansons acquired title, see section 527.260, RSMo 1986; *Neal v. Girdner*, 725 S.W.2d 924 (Mo.App.1987); *In re Hayward*, 74 B.R. 392 (W.D.Mo. 1987), it might furnish actual notice of plaintiffs' equitable claim to the property. Even disregarding any actual or constructive notice furnished by the so-called lis pendens, however, the record suggests the possibility of actual or constructive notice of plaintiffs' claim by other means.

The record does not show the purchase price paid by the Hansons to the Arnolds for the property, nor does it show the value of the property, nor who occupied it at the time of the Arnolds' sale and conveyance thereof to the Hansons. While the fact that a buyer may have gotten a bargain does not deprive him of the status of a purchaser for value, still the inadequacy of the purchase price may, combined with other circumstances, be sufficient to alert the buyer to defects in the seller's title and place him upon inquiry. 77 Am.Jur.2d *Vendor and Purchaser* § 658 (1975). To be noted also is the restriction in the deed

from the Emma Smith Memorial Trust to Stephen S. Arnold that such conveyance was made "subject to the conditions of prior agreement". As noted in our discussion of the 1709 Hands property above, this restriction placed the Hansons upon inquiry about the terms of the "prior agreement". The Hansons before their purchase of the property had a title search made which disclosed the restriction in the Emma Smith Memorial Trust–Stephen S. Arnold deed, but there is no indication whether they made any inquiry about the meaning of the restriction. Lilly B. Hanson was at this time a licensed real estate agent. The Hansons state in their motion for summary judgment only that "no mention was made by either of the grantors to [the Hansons], directly or indirectly of plaintiffs' claims."

Summary judgment for the Hansons against the plaintiffs is reversed and cause remanded for further proceedings.

### Claim against the Arnolds for both 1709 Hands Property and 332 East South Property

■ The trial court dismissed with prejudice the Haywards' claim against the Arnolds. Why this was done is not clear. The Arnolds lived in California and service of process was had by publication. The Arnolds were in default. The Haywards sought a default judgment against them, but the trial court denied the default judgment and sua sponte dismissed the Haywards' claim against the Arnolds with prejudice. The Arnolds have not filed any brief here, and we are unable to account for the dismissal.

The dismissal with prejudice of the plaintiffs' petition against the defendants Arnold is reversed and the case remanded for further proceedings.

The legal file we have before us contains 367 pages of materials with a useless index. We have leafed through it, reading any part of it which offered any hope of relevancy. In addition, we have secured the trial court file, which in three bulging folders contains half as much again as the legal file brought to us by the plaintiffs. Mr. Hayward is a tireless typist. The mer-

its, if any, of the Haywards' claims have been almost totally obscured, and we venture the prediction that when this case is returned to the trial court Mr. Hayward will succeed in burying beyond recovery any possibilities of merit which yet dimly appear. Still, the case may not be disposed of summarily in the present state of the record. Perhaps Mr. Hayward will seek the advice of wise and patient counsel who can advise him if his claim has any merit, and who, if so, can present it in an intelligible way.

The judgments in favor of all defendants are reversed and the case is remanded to the trial court for further proceedings.

Another case has become entangled with the case we have discussed above and has been attempted to be brought to us by appeal. That case bore the trial court title and number: *Security Pacific Finance Corp. v. Nelson W. Hayward, et al., v. Paul E. Gessler, et al.,* third party defendants, No. CV88–6950. This case involved an unlawful detainer action brought by Security Pacific against the Haywards. The Haywards filed counterclaims against Security Pacific and third-party claims against Paul E. Gessler and Robert Schollars. The trial court dismissed the counterclaims and the third-party claims on November 2, 1988. On November 17, 1988, the trial court granted Security Pacific's motion and dismissed the unlawful detainer action without prejudice. The dismissal with prejudice of Haywards' counterclaims and third-party claims therefore became final on December 19, 1988. The Haywards then had ten days in which to file their notice of appeal. Rule 81.04(a). The notice of appeal was filed only on January 3, 1989. It was too late and must be dismissed. *Baumann v. Brittingham,* 759 S.W.2d 880, 881 (Mo.App.1988); *Cimaglia v. County of St. Louis,* 756 S.W.2d 616, 617 (Mo.App.1988); *Weir v. Director of Revenue,* 750 S.W.2d 80, 82 (Mo.App.1988).

All concur.