**OUELLETTE MACHINERY SYSTEMS, INC.,**
**Appellant,**

v.

**CLINTON LINDBERG CADILLAC CO. and General Motors Corporation,**
**Respondents.**

**No. ED 78623.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 19, 2001.

Application for Transfer Denied
Dec. 18, 2001.

Matthew J. Sauter, St. Louis, MO, for appellant.

David C. Stout, Chuck N. Chionuma, Kansas City, MO, for respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

Ouellette Machinery Systems, Inc. (Ouellette), appeals from the trial court's grant of summary judgment in favor of Clinton Lindberg Cadillac Co. (Clinton) and General Motors Corporation (GM). Ouellette argues the trial court erred because the warranty agreed to at the purchase of the car was a warranty for future performance, and the statute of limitations would not begin to run until the defect was or should have been discovered. We affirm in part and reverse and remand in part.

Ouellette purchased a new Cadillac on June 16, 1995. The car had a 4–year/50,000 mile warranty. The warranty provided, in pertinent part:

**REPAIRS COVERED**

This warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the WARRANTY PERIOD. Needed repairs will be performed using new or remanufactured parts.

**WARRANTY PERIOD**

The WARRANTY PERIOD for all coverages begins on the date your Cadillac is first delivered or put in use and ends at the expiration of the COVERAGE period.

**GOLD KEY BUMPER TO BUMPER COVERAGE**

The complete vehicle (except for other coverages listed here and those items listed under "WHAT IS NOT COVERED" on page 5 and 6) is covered for 4 years or 50,000 Miles, whichever occurs first.

Ouellette filed a cause of action against Clinton and GM on October 13, 1999. In its petition, Ouellette alleged the car did not conform to the promises made by Clinton and GM, and Ouellette alleged he notified both Clinton and GM in a timely fashion of these nonconformities. Ouellette further alleged Clinton and GM failed to repair these nonconformities.

Clinton and GM filed a motion for summary judgment alleging the Ouellette's claims were barred by the four-year statute of limitations contained in Section 400.2–725, RSMo 2000. The trial court granted summary judgment. This appeal follows.

When considering appeals from summary judgments, we will review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.1993). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* We accord the non-movant the benefit of all reasonable inferences from the record. *Id.* Because the granting or denial of a motion for summary judgment is purely an issue of law, and because the trial court's decision is founded on the same record that we are to consider, we need not give the trial court's judgment any deference. *Id.* Our review is essentially *de novo*. *Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining inferences from the record. *Id.* Summary judgment is designed to permit the trial court to enter judgment, without delay,

where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* (citing Rule 74.04).

In its sole point, Ouellette argues the trial court erred because the warranty was a warranty for future performance, and the statute of limitations would not begin to run until the defect was or should have been discovered.

 Ouellette's claim for breach of warranty arising out of the purchase of the 1994 Cadillac is governed by the Uniform Commercial Code (U.C.C.). Under Missouri law, remedies for economic loss sustained due to damage to or defects in goods sold are limited to those under the warranty provisions of the U.C.C. *Wienberg v. Independence Lincoln–Mercury, Inc.,* 948 S.W.2d 685, 689 (Mo.App. W.D. 1997). The sale of a motor vehicle is a sale of goods and is governed by the U.C.C. *Id.*

 An action for breach of contract for the sale of goods must be commenced within four years after the cause of action has accrued. Section 400.2–725(1), RSMo 2000. The four-year period begins to run upon delivery of the goods unless the goods were sold with a warranty for future performance; in such case, the statute of limitations runs from the date on which the defect was or should have been discovered. Section 400.2–725(2), RSMo 2000; *Black Leaf Products Co. v. Chemsico, Inc.,* 678 S.W.2d 827, 830 (Mo.App. E.D.1984).

 To constitute a warranty for future performance, the terms of the warranty must unambiguously indicate the manufacturer is warranting the future performance of the goods for a specified period of time. *Wienberg,* 948 S.W.2d at 689. Under Missouri law, a warranty that a product is free from defect in quality or workmanship is a warranty for future performance of the product. *Id.* Language limiting the remedy to repair or replacement of the defective materials does not automatically render a limited warranty a replacement commitment rather than a warranty for future performance. *Id.* at 690. Even though it limits the remedy for breach of warranty of future performance to repair or replacement, it is still a warranty of future performance. *Id.*

 Here, Ouellette's petition alleged the existence of a warranty for future performance. Clinton and GM expressly warranted to Ouellette that defects in the materials or workmanship in the 1994 Cadillac would be repaired or replaced for a specified time-specifically 4 years or 50,000 miles, whichever occurred first. Clinton and GM, therefore, would repair or replace any defects in the vehicle until June 15, 1999, or until the time when the vehicle registered 50,000 miles, whichever occurred first. By warranting the future performance of the automobile for a specified period of time, Clinton and GM explicitly extended Ouellette's limited warranty to a warranty for future performance.

We find this case similar to the facts of *Wienberg.* In *Wienberg,* a car was sold with a warranty containing language that: "Ford warrants that its authorized dealers will repair, replace, or adjust all parts (except tires) that are found to be defective in factory-supplied materials or workmanship." *Id.* at 687. The court in *Wienberg* in analyzing this language found the warranty was a warranty for future performance, and the statute of limitations did not begin to run until the defect was or should have been discovered. *Id.* at 690. We agree with the court in *Wienberg* and find the trial court erred in granting the motion for summary judgment.

Clinton urges us to rely on the case of *Black Leaf Products Co. v. Chemsico, Inc.,* 678 S.W.2d 827. It argues the *Black Leaf* court properly focused on the warranty's language guaranteeing the future performance of the product. We disagree.

In *Black Leaf,* the court does not explicitly set out the warranty language at issue. The *Black Leaf* court states, "Defendant expressly warranted the product for two years against defects in quality or workmanship." *Id.* at 829. The *Black Leaf* court also states, "Under Missouri law, a warranty that a product is free from defect in quality or workmanship (as is present here) is a warranty for future performance of the product." *Id.* at 830. From these statements by the *Black Leaf* court, we cannot now say whether the language of that warranty is similar to the language used in the warranty here. We find *Black Leaf* is not contradictory to *Wienberg.* We further find the case of *Wienberg* instructive under our facts and follow it here.

We find that for any defect discovered in the four-year warranty period, the car buyer has four years to bring a cause of action under the statute of limitations contained in Section 400.2–725, RSMo 2000. From the record before us, and viewing it in the light most favorable to Ouellette for purposes of summary judgment, we cannot say as a matter of law that Ouellette should have discovered the breach of warranty before October 14, 1995 (four years before the petition was filed). We therefore affirm only as to those defects which were actually discovered or should have been discovered before October 14, 1995; as to the remaining defects occurring between October 14, 1995 and June 15, 1999, we reverse and remand for further proceedings.

Judgment affirmed in part and reversed and remanded in part.

MARY R. RUSSELL and RICHARD B. TEITELMAN, JJ., concur.